[4] The court did not err in admitting this statement or admission by appellant—the whole of it—in evidence. Leach v. State, 46 Tex. Cr. R. 510, 81 S. W. 733; 2 Branch's An. P. C. p. 1415, and cases cited by him in the fourth paragraph; Lawshe v. State, 57 Tex. Cr. R. 32, 121 S. W. 865; Taylor v. State, 29 Tex. App. 466, 16 S. W. 302; Hamer v. State, 60 Tex. Cr. R. 341, 131 S. W. 813; Powell v. State, 198 S. W. 323, and cases cited and reviewed; Evans v. State, 40 Tex. Cr. R. 58, 48 S. W. 194.

[5] Neither did the court err in admitting the sales slips for several days from the 22d to the 27th, inclusive, of May, 1916.

Appellant has several bills to short extracts from the testimony of Mr. Wright. These bills are so wholly defective as to preclude consideration by this court. James v. State, 63 Tex. Cr. R. 75, 138 S. W. 612; Best v. State, 72 Tex. Cr. R. 203, 164 S. W. 996; Lowe v. State, 206 S. W. 519 (not yet officially reported). However, if these bills could be considered, the testimony objected to was admissible, and the court committed no error in admitting all of it objected to by his bills.

[6] Neither did the court commit error in admitting the testimony of the banker showing the deposits appellant made on his individual account, his sole objection thereto being that it was immaterial.

Neither did the court err in refusing to give his peremptory instruction to acquit. Nor in refusing to give his peremptory charge to acquit on the ground that if he was guilty of anything he was guilty of the theft of the money, and not of the embezzlement of it.

Appellant's main contention seems to be that the evidence made out the offense of theft. He does not say as bailee, but perhaps that is his contention instead of ordinary theft. The statute under which appellant was convicted is as follows: If any officer, agent, clerk, or attorney at law or in fact of any incorporated company, or any consignee or bailee of money or property, shall embezzle, fraudulently misapply, or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such office, agency,

or employment, he shall be punished, etc. Article 1416, P. C.

Conversion or theft by bailee is thus defined: Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished, etc.

[7] In our opinion the evidence in this case without doubt establishes a typical case of embezzlement and not bailee theft. Johnson v. State, 71 Tex. Cr. R. 207, 159 S. W. 849; Reed v. State, 16 Tex. App. 590; Wilson v. State, 47 Tex. Cr. R. 160, 82 S. W. 651.

[8] But, if the evidence should also be held sufficient to show bailee theft, this court holds: "Although an act may have constituted theft of property acquired by bailment under" article 1348, P. C., "that affords no reason why it would not also constitute embezzlement under the general statute [article 1416]." Wilson v. State, 47 Tex. Cr. R. 159, 82 S. W. 651; Lewis v. State, 48 Tex. Cr. R. 311, 87 S. W. 831.

The court's charge submitted every issue aptly and properly that was raised by the testimony. The facts did not call for any charge on embezzlement of less than $50.00. The Lawshe Case, supra, and other cases. None of appellant's objections to the court's charge show any reversible error.

The judgment is affirmed.

---

McDONALD v. LASTINGER. (No. 6060.)

(Court of Civil Appeals of Texas. Austin. July 5, 1919. Rehearing Denied Oct. 8, 1919.)

1. FRAUD 11(2)—POSITIVE STATEMENT OF VALUE OF STOCK WAS REPRESENTATION OF FACT.

Where one trading corporate stock for lands positively insisted after discussion that the stock was not only worth 75 cents on the dollar, but had such market value, and the other party had no knowledge on the subject; and believed and relied on the statement, such statement as to value by the party exchanging the stock was a representation of fact rather than of opinion, and therefore actionable.

2. FRAUD 22(1)—THAT INQUIRY WOULD HAVE SHOWN MISREPRESENTATION OF VALUE OF STOCK NO DEFENSE.

Where one exchanging corporate stock for lands misrepresented its value at 75 cents on the dollar, he cannot defend the other party's action for damages from the fraud on the ground that had inquiry and investigation been made the falsity of the representation would have been discovered.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. FRAUD ☞13(2) — IGNORANCE OF FALSE REPRESENTATION OF VALUE OF STOCK NO DEFENSE.**

Whether the party who exchanged corporate stock for lands, misrepresenting the value of the stock, knew that he was making a false representation, is immaterial to his liability to the other party if such other party in fact believed the representations to be true, relied on them, and closed the transaction on the faith thereof.

**4. EXCHANGE OF PROPERTY ☞5—PARTY TAKING STOCK IN EXCHANGE FOR LAND ON FALSE REPRESENTATION NOT GUILTY OF LACHES.**

One who exchanged lands for corporate stock under misrepresentations of the value of the stock, giving his note for the difference in value, *held* not guilty of laches in not demanding rescission or claiming damages, but setting up the misrepresentation as a foundation for a cross-action for cancellation and damages when sued on the note in the fall after the spring in which he discovered the falsity of the representations of the value of the stock.

**5. EXCHANGE OF PROPERTY ☞8(3)—LACHES AS A DEFENSE MUST BE PLEADED.**

In an action on note given for difference on exchange of land for corporate stock, in which defendant cross-claimed for misrepresentation, asking cancellation and damages, defendant's laches must be pleaded.

**6. SET-OFF AND COUNTERCLAIM ☞35 — IN ACTION ON NOTE CROSS-ACTION FOR MISREPRESENTATIONS ON GIVING NOTE ALLOWABLE.**

In suit on a note given for the difference between the values of corporate stock and farm lands exchanged, it was permissible for defendant, the former owner of the farm lands, and maker of the note, to bring a cross-action against plaintiff for misrepresenting the value of the corporate stock, such cross-action having arisen out of, and been incident to or connected with, the liquidated demand sued on.

**7. NEW TRIAL ☞99, 150(1)—PROPERLY DENIED FOR NEWLY DISCOVERED EVIDENCE, NO DILIGENCE BEING SHOWN.**

Where motion for new trial for newly discovered evidence was unaccompanied by the affidavit of the witnesses, no diligence was shown, and the testimony was chiefly on the matter of the impeachment of the adverse party's testimony, such motion was properly denied.

Appeal from McLennan County Court; James P. Alexander, Judge.

Suit by C. L. McDonald and others against W. W. Lastinger. From judgment against the named and in favor of the unnamed plaintiffs against defendant, and in favor of defendant on his cross-action against the named plaintiff, the latter appeals. Affirmed.

S. J. T. Smith, of Waco, for appellant.
S. E. Stratton, of Waco, for appellee.

BRADY, J. Appellant, C. L. McDonald, and Z. F. Cunningham and W. H. Price sued appellee, W. W. Lastinger, upon a promissory note for the sum of $422.60, with interest and attorney's fees. It was alleged that Cunningham and Price had acquired an interest of $200 in the note before maturity, and for a valuable consideration, and they claimed to be innocent holders in good faith. Lastinger defended by general demurrer, general denial, and special answer, pleading failure of consideration and fraud, and asked damages by way of cross-action for the sum of $750, prayed for cancellation of the note, and for judgment over against appellant for wrongful circulation of the note, and for any recovery against him by Price and Cunningham.

The case was tried without a jury, and the court rendered judgment that appellant, C. L. McDonald, take nothing by his suit, and in favor of Cunningham and Price against Lastinger for $246.20, and in favor of Lastinger against appellant upon his cross-action for $996.20.

## Findings of Fact.

In deference to the judgment of the trial court, we find that appellee executed and delivered the note in suit to appellant, C. L. McDonald, and that, prior to maturity, McDonald sold and assigned, for a valuable consideration, an undivided one-half interest in the note to Price and Cunningham, and that they were innocent holders; that there was attached to the note as collateral $1,000 of the capital stock of the Texas Coffee & Extract Company; that the note was given as the result of a trade between McDonald and Lastinger, in which Lastinger traded his equity in a farm, estimated to be worth $3,500, for $5,400 par or face value of the capital stock of the Texas Coffee & Extract Company, belonging to McDonald. The trade was fully discussed between the parties, and the principal discussion was over the value of the stock and the land. The trade was effected by Lastinger's conveying to McDonald the farm, subject to the incumbrance thereon, and his executing to McDonald the note sued upon, and by McDonald's transferring and delivering to Lastinger the shares of stock in the amount stated. Lastinger represented to McDonald that the land was worth $75 per acre, which was agreed to be its market value, and it was proven on the trial to be of that market value. Lastinger did not know the value of the stock, which was represented by McDonald to be $75 per share, or 75 cents on the dollar for the $5,400 par value. Lastinger objected to giving the note, and wanted the price of the stock reduced, but McDonald insisted that it had a market value of 75 cents on the dollar, and that it was worth the equity in the land, together with the

amount of the note to be demanded. Lastinger did not inquire nor make any investigation as to the value of the stock in the Texas Coffee & Extract Company, but relied solely on the representations made to him by McDonald in making the trade, and he would not have closed the deal had he known it did not have such market value, and would not have conveyed his lands to McDonald.

The contract was entered into about January 16, 1916, but the sale was not concluded and transfers made until March 13, 1916. During that period Lastinger was away in Robertson county, Tex., looking after some farming interests for others and was in Waco only at intervals on Saturday evenings and Sundays.

The market value of the capital stock of the Texas Coffee & Extract Company on January 16, 1916, and at the time of passing the deed March 13, 1916, was 10 cents on the dollar, or 10 per cent. of the par value. After he traded for the stock, Lastinger placed it as collateral security with Central Texas Exchange National Bank, but at that time made no investigation as to its value, and did not learn of the true value of the stock until the summer of 1916, when the manager of the Texas Coffee & Extract Company advised him that the stock had no market value, and did not have when transferred to him, and that the indebtedness of the company was greater than its assets. Being called upon by the bank to pay his indebtedness, for which the stock was collateral security, in the fall of 1916 or spring of 1917, and being unable to do so, the bank advertised the stock for sale in a Waco daily paper at 10 cents on the dollar, but was unable to secure a buyer at any price. He then learned that the stock was not worth more than 10 cents on the dollar on the market, and later ascertained that the management of the corporation had effected a settlement of its indebtedness at 25 cents on the dollar, either in the winter of 1916 or spring of 1917, and that the concern was still going. After the settlement with its creditors the stock had no greater value than 10 cents on the dollar, and Lastinger had been unable to sell the same at any price. Lastinger had a business experience of about 30 years, about 5 years of which time he had been cashier of banks, and had handled various stocks, and about 10 or 15 years of the time he had been in the real estate and loan business. A part of the time he was looking after his farm and some of the time was doing nothing. He had known McDonald in a business way for several years prior to the exchange of properties, and from general information regarded him as an honest and honorable young man, solvent and financially responsible for his obligations; that he did not attempt to rescind the trade, nor try to collect any refund or damages from McDonald prior to the present suit; that he left the matter of handling his defense, and filing the cross-action to his attorney.

## Opinion.

By several assignments of error in appellant's brief the question is presented, in substance, that the judgment was erroneous, and that the trial court should have granted a new trial, because appellant had made no representation of fact, but merely of opinion, and because it was shown that appellee made no inquiry or independent investigation, although he had the opportunity to do so, and because he was guilty of laches in not seeking a rescission of the trade, or making complaint to appellant, for more than a year after the trade was consummated. These assignments also present the claim that there was error in the judgment, because it is not shown that appellant knew that the stock was worthless or practically so, when he made the alleged representation.

[1] We have experienced some difficulty in reaching a conclusion upon the issue raised by these assignments, especially upon the question as to whether or not the representation made by appellant constituted a representation of fact, or merely an opinion upon which appellee had no right to rely, but was required to make inquiry and investigation. After a mature consideration of the matter, we have concluded that the representation, under the circumstances of this case, was one of fact rather than of opinion. It has been shown that appellant made the positive statement to appellee, and insisted, after a discussion upon the subject of value, that the stock was not only worth 75 cents on the dollar, but that it had that market value. It was also shown that appellee had no knowledge on the subject, and believed and relied upon the statement of appellant.

In the case of Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, the Supreme Court held that although a statement by a vendor of land that he had and could convey good title embodied a conclusion drawn from the facts relative to the title, it was in effect a representation that the facts which would constitute a good title to the land existed. This holding was made, although at the time of the sale the party selling the land and making the representation furnished the purchaser with an abstract which showed defects in the title, it being shown that the purchaser was ignorant concerning land titles. The substance of the opinion in that case is that the statement was not a mere expression of opinion for which the seller would not be responsible, but had the effect of a statement of fact.

We regard the instant case as a stronger case of fraud than the Buchanan Case, and that the representation as to market value was one of fact, or at least a claim of

knowledge of the facts as to value. Appellant cannot be permitted to say that what he represented as a fact within his knowledge was a mere expression of opinion upon which the appellee had no right to rely, and as to which he was under the duty to independently inquire and investigate.

[2] As to the question of the necessity of an inquiry and investigation by appellee, the Buchanan Case is also in point. That case quotes with approval from Labbe v. Corbett, 69 Tex. 509, 6 S. W. 811, as follows:

"When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'"

This seems a complete answer to the contention, especially when it is considered that appellee gave a reasonable excuse for not making inquiry at the time and before the conclusion of the trade.

[3] Upon the question of the failure of the evidence to show that appellant knew that he was making a false representation as to the market value of the stock, it is sufficient to say that this is immaterial, if in fact appellee believed the representations to be true, relied upon them, and closed the trade upon the faith of the statements of appellant. Mitchell v. Zimmerman, 4 Tex. 81, 51 Am. Dec. 717; Buchanan v. Burnett, supra.

It is as much a fraud to represent a thing to be true when the party making the statement does not know whether it is true or not as it is to represent it to be a fact with positive knowledge of its untruth. In this case appellant positively stated the matter of market value as a fact, and it is unimportant whether he knew it to be false or not.

[4, 5] There remains the further claim upon this issue that appellee was guilty of laches in not demanding a rescission or in not claiming or suing for damages before making his defense in this suit. We think the contention is without merit, especially as this suit is not for a rescission of the contract, but is for damages in a cross-action to appellant's suit upon the note, and because it was shown that appellee did not learn of the falsity of the representation until the spring of 1917, and this suit was instituted in the early fall. We do not think appellee was precluded from recovering his damages because of delay in asserting his claim, and, further, because there was no pleading raising the question of laches.

For the reasons stated the assignments on the issue of fraud will be overruled, and we cite the following additional authorities in support of our conclusion: George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; Dempster Mill Mfg. Co. v. Humphries, 189 S. W. 1110; Moore v. Beakley, 183 S. W. 381; White v. Peters, 185 S. W. 659; Heck v. Robinson, 194 S. W. 456.

[6] The third assignment of error complains of the judgment because the cross-action was based upon a tort, and could not be maintained in a suit upon a liquidated demand. There is no merit in the proposition, and it is sufficient to say that our statute authorizes such a cross-action when it arises out of, is incident to, or connected with the liquidated demand sued upon.

The fourth assignment of error asserts that there is not a scintilla of evidence in the record to sustain the judgment on the cross-action. This assignment is overruled, the record showing ample evidence to sustain the judgment rendered.

[7] The fifth and last assignment complains of the action of the trial court in refusing a new trial on the ground of newly discovered evidence. It is claimed that the refusal of the motion was an abuse of the discretion of the trial court. To this proposition we cannot assent, because the motion was not accompanied by the affidavit of the witnesses whose testimony was sought, no diligence was shown, and the testimony was chiefly upon the matter of impeachment of appellee's testimony. We deem it unnecessary to cite authorities that, under such circumstances, it is not an abuse of discretion for the trial court to refuse a new trial.

All assignments have been considered, and, finding no reversible error, the judgment is affirmed.

Affirmed.