**BALLEW v. McELROY et al.  (No. 3088.)**

Court of Civil Appeals of Texas.  Amarillo.
Oct. 24, 1928.

Sam J. Hamilton, of Memphis, and Vance Huff, Rip E. Underwood, and Underwood, Johnson, Dooley & Simpson, all of Amarillo, for appellant.

Elliott & Moss and Fitzgerald & Grundy, all of Memphis, for appellees.

RANDOLPH, J.  This suit was instituted by the plaintiff, Ballew, against C. A. McElroy, H. F. Elrod, and J. F. Tomlinson, defendants, to recover possession of an automobile of the reasonable value of $1,000.

On trial before a jury, after hearing the evidence, the trial court instructed a verdict in favor of defendants as against the plaintiff's cause of action, and against the defendants on their cross-action, upon which verdict judgment was rendered in favor of defendants, as stated, and appeal has been taken therefrom to this court.

Plaintiff's petition alleges, stated as briefly as is consistent with a necessary understanding thereof: That he was the owner and in possession of a certain described automobile.  That the defendants, through a false and fraudulent scheme, obtained possession of the car in controversy, and have since fraudulently held the car, and have appropriated same to their own use and benefit, and that defendants have conspired and acted together to cheat and trick the plaintiff out of said automobile and the value thereof.  That at the time of the appropriation of the car by defendants, the same was of the reasonable market value of $1,000.  That the plaintiff took immediate steps to recover said automobile, and brought this suit in the district court of Hall county, Tex., against C. A. McElroy, who was then in possession of same, and sequestered said automobile, but said McElroy, Elrod, and Tomlinson, in furtherance of their scheme and design to cheat and defraud the plaintiff out of said automobile, replevied same by giving their bond in replevy, C. A. McElroy, as principal, and Elrod and Tomlinson, as sureties, and have taken and held said automobile and have continuously used same, and it is now of the value of not more than $200, to plaintiff's damage, by reason of the damage and deterioration of said car, in the sum of $800.

That the defendants are claiming the automobile by virtue of an alleged contract of sale between the plaintiff and the defendants, whereby the defendants claim to have traded plaintiff certain Rock Island & Pacific Bonds, but plaintiff alleges that the said contract of sale was not in fact made and entered into by and between plaintiff and defendants, but plaintiff alleges that, relying upon the false and fraudulent representations hereinafter set out, he did in fact turn over to said defendants and each of them the said automobile, and did, in fact, receive from defendants the said bond, but it was expressly understood and agreed by and between the par-

ties that plaintiff should investigate said bond, and, if he found the representations made by defendants concerning said bond to be as defendants had represented them to be, then said sale and exchange was to be finally consummated, and plaintiff was then to execute and deliver to said defendants a bill of sale covering said automobile. But, if said bond was found not to be as defendants represented, then defendants were to deliver back to plaintiff said automobile, and plaintiff was to deliver back to defendants said bond. Plaintiff further alleges that said representations made to him by defendants as to said bonds were wholly false and fraudulent, and that, as soon as he learned that said representations were false, he offered said bond to defendants and demanded his automobile, which defendants refused to deliver to him, and refused to accept said bond.

Plaintiff's allegation covering the false representations of defendants specifically is as follows:

"And said alleged sale and exchange of said automobile for said railroad bond is further void and of no force and effect and does not pass or vest title to the said automobile or rights therein to the said defendants, because the sole and only consideration supporting the sale and exchange, if any sale there was, was the delivery to plaintiff by the defendant of the Chicago, Rock Island and Pacific Railway Bond No. 28622 of the four per cent. Gold Bond Series of 2002, which plaintiff was induced to accept by the false and fraudulent representations of the said defendants, C. A. McElroy, H. F. Elrod, and J. F. Tomlinson, in that said defendants and each of them fraudulently represented to plaintiff and asserted to plaintiff that said bond was worth and could be sold at from ninety-one cents to ninety-one and a half cents on the dollar on the New York Stock Exchange, and in truth and in fact said bond is not worth anything and is of no value on said New York Stock Exchange, and could not and cannot be sold on said Exchange at any price or any sum, but is wholly valueless and worthless; and said representations by said defendants were wholly false and fraudulent and made to this plaintiff for the purpose and design of defrauding him out of the said automobile and the value thereof; said defendants knowing at the time they made such representations that the same were false and untrue and knew that plaintiff wholly relied upon the representations and knew but for said representations plaintiff would not have delivered his said automobile to defendants; and in furtherance of their fraudulent scheme to design to trick and cheat plaintiff out of his said automobile, said defendants and each of them represented to plaintiff that said bond was then being listed on the New York Stock Exchange and could then be sold on said Exchange at from ninety-one cents to ninety-one and a half cents, which said representations were false and untrue and defendants knew same were false and untrue; and defendants further falsely and fraudulently represented to plaintiff that said bond was the same bond as was then being carried in the New York Stock Exchange listings as published in the 'New York Times'; and said defendants pointed out and designated certain bonds listed in said publication as being of the same series of bonds as the one then being offered to plaintiff by defendants, and plaintiff being wholly unfamiliar with said bond listings did not know the meaning of the various abbreviations contained in said publication describing said bonds and relied solely upon the representations of said defendants as to their meaning and relied upon the representations of said defendants as to the identity of the bonds published and listed therein with the bond offered, plaintiff relying upon said defendants and defendants knew that the plaintiff was relying upon their statements and representations made to him concerning said bond; but in truth and in fact the bonds pointed out in said listings so published in said 'New York Times' were not of the same series of bonds as the one offered to plaintiff by defendants, and defendants knew that said bonds so listed in said 'New York Times' were not of the same series of bonds as the one offered to plaintiff and made such misrepresentations as to the identity of said bonds for the purpose of misleading and defrauding plaintiff, knowing that plaintiff knew nothing about the bonds and knew that plaintiff was relying solely and alone upon representations made by them to him, and which representations so made by defendants, as to the value of said bond on the New York Stock Exchange, as to the listing of said bond on said Exchange, and as to the identity of the bond offered plaintiff with the bond described in the 'New York Times' and pointed out to him by the defendants, were wholly false and fraudulent and were known by said defendants and each of them to be false and untrue at the time they made such statements, and they, the said defendants conspiring together and in collusion, made such false and fraudulent statements and representations to this plaintiff for the purpose of inducing plaintiff to trade the automobile to them for said bond and said defendants and each of them knew that plaintiff was relying on such statements and representations, and said false and fraudulent statements were made by said defendants and each of them to this plaintiff with the purpose and design of defrauding this plaintiff out of said automobile and the value thereof; and plaintiff says he was and is now wholly inexperienced in dealing in bonds and relied wholly upon the representations of the said defendants, C. A. McElroy, H. F. Elrod, and J. F. Tomlinson, and plaintiff believed the statements and representations of said defendants and relying on the same, delivered possession of his said automobile to the said defendants and said defendants delivered said Chicago, Rock Island and Pacific Railway Bond hereinabove mentioned and described to this plaintiff and said defendants and each of them at the time of the delivery of said bond to plaintiff knew that the same was wholly valueless and worthless, and that the statements and representations made by them to plaintiff with reference to the bond were false and fraudulent, and knew that plaintiff was relying on such statements and representations; and plaintiff says that by such false and fraudulent and deceitful representations the said defendants falsely and fraudulently obtained possession of plaintiff's automobile and but for such false and fraudulent statements and representations, plaintiff would not have delivered the said auto-

mobile to said defendants, and plaintiff says that he will suffer substantial damage and great and irreparable injury if such alleged sale and exchange be enforced and upheld, and that it will be unjust and inequitable to this plaintiff to enforce the same, and plaintiff further says that said bond, which was the sole and only consideration to him for the alleged agreement between himself and the defendants for the sale of said automobile for said hereinabove described bond, is wholly worthless and valueless and plaintiff now tenders the same into this Court and to the said defendants and asks that such exchange and sale, if any there were, be set aside, cancelled and held for naught and that plaintiff recover his said automobile and the sum of ($800.00) Eight Hundred Dollars damages to said car of and from the said defendants C. A. McElroy, H. F. Elrod and J. F. Tomlinson."

Plaintiff further alleges that said bond was the property of defendant Tomlinson, which had been placed in the hands of defendant McElroy for sale, and that the defendant Elrod acted and connived with defendant McElroy in all his acts and representations in his dealings with plaintiff, and that defendant Tomlinson, knowing of the acts and representations made by the defendants McElroy and Elrod, and knowing the same to be false and fraudulently made, ratified, confirmed, and acquiesced in said representations; wherefore each and all of the defendants are liable to this plaintiff for said automobile and the value thereof.

Plaintiff further alleges that said bond is worthless, and that he would not have accepted same and delivered his automobile as he did had he not relied on the said representations, etc.

The defendants filed their answer containing general demurrer, special exceptions, and cross-action against the plaintiff and one E. H. Powell, seeking to recover for the use of the automobile while it was detained in said Powell's garage, etc. (The case against Powell having been dismissed without objection, same will not be considered further.)

The plaintiff assigns error in the matter of the court's peremptory instruction to the jury, in part, upon the following grounds:

(1) Because the plaintiff's pleadings and proof raised the issue, in substance, that the transaction in question by which the defendants secured custody of the automobile, and failure to secure the bond, was conditional in character; that is to say, that the deal was conditional upon whether plaintiff's investigation would confirm the defendants' representations regarding the value of the purported bond, and, in case such representations regarding the value of same were not confirmed, the automobile was to be returned to plaintiff and the bond to defendants.

(2) That such bond was utterly worthless, and therefore the issue should have been resolved in favor of plaintiff by the jury.

(3) That the evidence showed that the plaintiff was deceived by, and relied on, such false representations.

In reply to this contention that there being no pleading or evidence that appellee did in any manner fraudulently or otherwise mislead plaintiff or prevent him from making a fair investigation, the ruling of the court was correct.

■ As we understand plaintiff's pleading, it is alleged that the false representations charged to have been made by defendants for the purpose of inducing plaintiff to turn his automobile over to the defendants, and the further pleading that he did so with the understanding that he was to investigate into the value of the bond, and that it was worthless, have no other relation to the charge of fraud, but as an inducement to so deliver the possession to the defendants. The allegation of fraudulent representations, therefore, applying only to the delivery of the automobile, cannot be used to limit the right of plaintiff to recover the automobile, except as it is incidental in establishing the truth or falsity of the facts alleged by plaintiff that he had the right to investigate into the value of the bond, and that no final trade had been made.

As stated, the plaintiff's pleading does not allege that he relied on the representations of defendant that the bond was of value. On the contrary, he expressly alleges that he was to make an investigation as to the value. It is only by inference that he alleges that he made the investigation, but he does allege that the bond was worthless. He also proves that fact by his witness Wolfe. Hence these allegations and proof presented an issue for the jury.

■■ The action of the trial court in instructing a verdict is tantamount to the sustaining of a general demurrer. Even though the plaintiff was the only witness who testified as to the representations, he had the right to have the jury pass on the truth or falsity of his statement.

■ Relative to the circumstances and terms of the trade, plaintiff testified:

"Mr. McElroy had been trying to trade for this car for a number of days—I don't know exactly how long. He had been trying to trade me some railroad stock which I didn't know anything about. In the meantime, I was down at the drug store and Mr. Elrod asked me why I didn't trade for the railroad stock Charley McElroy had and I told him I didn't know anything about it. He said 'It is all right, I know it.' I was in there again and Mr. Elrod made that remark and said that he wished he had something to trade for it because it was good. That happened several times. He kept on telling me how it was and I considered him a good authority. So one day I was in there and he brought out a New York paper and he said 'Here is this stock listed by the New York Stock Exchange that Charley was trying to trade you,' and he put a little cross by it with a pencil. He said, this shows that stock like that sold for ninety-one cents on the dollar, and I said 'well,

if that is the stock you are trading me I will give the automobile even.' So, they agreed to that and handed me some money to register the car with. So I walked up to the place with the stock and he wanted the car and I told him he could take the car but I would not give him the bill of sale to it until I found the stock was all right; and after the investigation I would give them a bill of sale. I thought the stock was all right and came back down the street and Mr. Elrod said 'I think that stock is all right.' That is the first idea I had that the stock was not all right. Yes, after we went to my sales room I told them that I would not give them a bill of sale until after I found out the stock was just like they said. I made the investigation and found the bond not to be as represented by the defendants."

Clearly, if the plaintiff's statement was true, he had not yet delivered the car to defendants at the time he claims to have told McElroy that he could take the car, but that he would not give him a bill of sale to it until he found the stock was all right. This we say in reply to defendants' statement that there is nothing in the statement of facts that plaintiff, in making the trade reserving the right to investigate the bond, would consider the trade incomplete until he had done so.

█ The mere statement of opinion made to one having equal means of knowledge will not amount to a representation of fact, but the making of a statement of the value of the bond alleged to have been made by Elrod and McElroy was a statement of fact made to one who claims to have been ignorant thereof; hence it does not come within the rule as to the expression of a mere opinion. Roark v. Prideaux (Tex. Civ. App.) 284 S. W. 624; Massirer v. Milam (Tex. Civ. App.) 223 S. W. 302; McDonald v. Lastinger (Tex. Civ. App.) 214 S. W. 829; Ripley v. Case, 78 Mich. 126, 43 N. W. 1097, 18 Am. St. Rep. 428.

Being of the opinion that the pleadings stated a cause of action, and that there was evidence to support the pleadings, and being of the further opinion that the issues involving the questions presented by the pleadings in evidence on the part of plaintiff should have been submitted to the jury, we reverse the judgment of the trial court, and remand the case for a new trial.