### KING v. CLIETT et al.
No. 936.

Court of Civil Appeals of Texas. Waco.
June 26, 1930.

Rehearing Denied Oct. 2, 1930.

G. L. Armstrong, of Dallas, and Geo. Clark and J. J. Campbell, both of Waco, for appellant.

Frazier & Averitte, of Hillsboro, for appellees.

BARCUS, J.

On May 10, 1928, appellant and wife, by warranty deed, conveyed to appellee A. Gus Cliett a house and two lots in the city of West, for a recited consideration of $1,550, cash paid, and subject to the indebtedness against said property, which was about $450. The $1,550 was paid by $50 in cash, and a purported vendor's lien note for $1,500 against certain property in Tarrant county, Tex. On July 28, 1928, appellant instituted this suit against A. Gus Cliett, H. H. Thomas, and Eric Chapman to cancel said deed and recover damages which he claimed to have suffered, alleging, in substance, that the $1,500 note which had been given him and which each of the named defendants had told him and guaranteed to him was perfectly valid was absolutely worthless. On January 28, 1929, appellant and his wife executed and de-

livered to appellee Cliett a document which recites that appellant had previously executed the warranty deed to Cliett for the consideration named in the deed, and that appellant had brought this suit in the district court of McLennan county, and that the suit had put a cloud on the title of Cliett to the property, and then stated (1) that the consideration specified in the deed as having been paid by Cliett was in truth and in fact paid to appellant, (2) that the property was not the homestead of appellant, (3) that the deed was properly acknowledged by appellant's wife, (4) that Cliett had not personally made any false representations with reference to the purchase and sale of the land, and that appellant's suit as to Cliett was without merit, and paragraph (5) is in the following language: "We have demanded of the said A. Cliett the payment to us of the sum of $100.00 in consideration for our withdrawal from said suit in order to have the cloud removed from the title to said property incident to the existence of said suit and the claims personally asserted by us in the petition on file therein, and he has paid us said $100.00, the receipt of which is hereby acknowledged, for that and no other purpose. And it is expressly understood and was so understood at the time said payment was made that he would and did not thereby in anywise admit any liability as a defendant in said suit or the verity of any allegation in said petition contained; and this instrument is signed, executed and delivered by us after we and each of us have carefully read the same over and understand its contents, in consideration of the premises and for the purpose of affirming the full and complete validity and the binding effect on us of said deed recorded in Volume 394, page 531, of the Deed Records of McLennan County, Texas, reference to which is above made." Said document was acknowledged in the form of a deed and was also sworn to by appellant and his wife.

The first information the attorneys for appellant had of the above document was when the amended answer of appellee Cliett was filed on October 4, 1929, the date the cause was tried.

Appellant, by an amended pleading, sought to recover judgment against each of the defendants in the trial court for $1,400, being the amount named in the deed, less the $50 originally paid and the $100 paid by appellee Cliett on January 28, 1929. Appellant alleged that appellees, and each of them, represented that said $1,500 vendor's lien note was a bankable note and was worth 100 cents on the dollar and could be cashed without trouble at any bank. He alleged said representations were false and fraudulent, and that each of said appellees knew same to be false and fraudulent; that he relied on said representations and but for same he would not have conveyed his property to Cliett. He

alleged that at the time he signed the deed in May, 1928, his wife was sick, and that he was without employment, and that he was selling the house and two lots in West, being the only property he and his wife owned, in order that they might meet the bare necessities of life.

He alleged that at the time he signed the document in January, 1929, he and his wife were both without employment; that she was in very bad health; that they were depending upon charity for their meals, and that they were in dire distress and need; that appellee Cliett knew said facts; that Cliett told appellant and his wife that he would give them $100 if they would sign said document, and for them not to tell their attorneys or any one else about having signed it, and that, if they did not accept the $100, they would not, as a matter of fact, get anything. Appellant alleged that by reason of said representations and by reason of the condition in which he and his wife were at the time, both physically and financially, he signed said document and received from appellee Cliett the said $100.

The cause was tried to the jury, and at the conclusion of the testimony the trial court discharged the jury and entered a judgment in favor of each of the defendants, denying appellant any recovery.

In its judgment the trial court stated that there had not been proper service on the defendants Thomas and Chapman to authorize appellant a recovery. He, however, entered a decree specifically denying appellant any recovery against said defendants.

By a number of propositions appellant contends the trial court erroneously discharged the jury and withdrew the case from them and entered judgment in favor of appellees, his contention being that there were issues of fact raised by the pleading and testimony that should have been submitted to the jury, which, if answered favorably, would have entitled him to a verdict.

Appellant testified that in the spring of 1928 he was without employment; that his wife was sick, and that he was in sore need of money, and that he enlisted the services of appellees Thomas and Chapman to assist him in selling his house and two lots at West; that in May, 1928, they told him they could sell said property to appellee Cliett for $1,550, and Cliett would pay the outstanding liens, amounting to about $450, against said property, and that he agreed to take said price; that thereafter appellee Cliett came to Dallas with an abstract of title which he (Cliett) had had prepared to appellant's property in West, together with the deed reciting a cash consideration of $1,550, and subject to the indebtedness against same; that Cliett gave him a check for $50 and gave him a vendor's lien note for $1,500, payable to H. S.

Akin, and by Akin indorsed, and purporting to be a lien on some property in Tarrant county, and that Chapman and Thomas, as agents for Cliett, represented to him that said note was a bankable note and could be cashed at any bank, and that same was worth face value; that he relied on and accepted said note on said representations. He further testified that said note was absolutely worthless, and that appellees knew said fact. Defendant Thomas testified that he was the agent of appellee Cliett, and that Cliett paid him a commission for making the deal and getting the property from appellant, and that Cliett owned said purported vendor's lien note on the Tarrant county land, he having purchased same from H. S. Akin. The testimony shows that appellant was doing menial labor in one of the hospitals in Dallas; that his wife was a sickly woman and that they were in dire financial stress. Appellant testified that in January, 1929, his wife was sick and he was in dire need of financial assistance; that he was receiving weekly a certain amount from the charity fund in Dallas; that he went to Hillsboro, walking part of the way and getting a free ride a part of the way, to see appellee Cliett and collect from him the $1,500 that was still due him on his land; that appellee Cliett told him he would be up to Dallas in a few days and see him and not to discuss the matter with his attorney or any one else; that Cliett advanced to him the railroad fare home, and that a few days thereafter Cliett came to his apartment in Dallas with a notary public with the instrument dated January 28, 1929, already prepared, and told him and his wife that if they would sign the document he would give them $100; that if they did not sign it they would never get anything out of the matter; that by reason of their dire necessity and distressing condition, and the statement made to them by Cliett that he knew as a matter of fact they could not recover anything in said suit, they signed the instrument and received from Cliett the $100, less the $3 which he had advanced as railroad fare. Appellee Cliett testified he knew he had not paid appellant the $1,550 called for in the deed, and that the statement he had placed in the document of January 28, 1929, that he had paid same was false. There was no contention that the $1,500 note which Cliett had given appellant as part of the purchase price was worth anything, and no contention made that appellant had received anything of value for his house and two lots in West except the original $50 and the $100 which had been given to him by appellee Cliett in January, 1929; neither was there any contention that the property in West which was conveyed by appellant to Cliett was not worth the $1,550 in cash over and above the indebtedness against same.

The trial court did not give the theory upon which he rendered judgment for appellee Cliett. In his brief appellee Cliett contends the trial court was justified in rendering judgment for him by reason of the document which appellant executed on January 28, 1929, at the time appellee paid the additional $100.00. His contention being that said document had the force and effect of an accord and satisfaction of all claims appellant had against him, and that appellant was thereby estopped from further prosecuting this suit.

The general rule is that, before the trial court is authorized to give an instructed verdict, it must appear from the record, viewed in its most favorable light, that the party against whom the verdict is instructed was not entitled to recover, since the jury alone has the right to pass upon the credibility of the witnesses and the weight to be given their testimony. Ballew v. McElroy (Tex. Civ. App.) 10 S.W.(2d) 213. Unless, therefore, it can be said, as a matter of law, that there were no facts or circumstances introduced in evidence in this cause which would have authorized the jury to set aside the contract of settlement contained in the document which appellant signed on January 28, 1929, the judgment of the trial court should be reversed. There are many conditions under which our courts have held a jury is authorized to set aside a contract made between parties, and courts of equity scrutinize very carefully a contract made where the consideration paid is grossly inadequate, or where it appears that one party thereto is laboring under mental, physical, or financial distress to such an extent that the other party may have overreached or taken an undue advantage of the other party. The Legislature of this state recognizing the fact that frequently unscrupulous parties would, by false and fraudulent representations, obtain lands from unsuspecting victims, enacted article 4004 of the Revised Statutes, which provides that: "Actionable fraud * * * with regard to transactions in real estate * * * shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. * * * All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered. * * * All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages."

Our courts have uniformly held that, where a party, through fraud, obtains title to land, all those who participated therein or who received benefits therefrom are liable in

**354**

damages to the party defrauded. American Rio Grande Land & Irr. Co. v. Barker (Tex. Civ. App.) 268 S. W. 506; North Texas Gin Co. v. Thomas (Tex. Civ. App.) 277 S. W. 438; Spencer v. Womack (Tex. Civ. App.) 274 S. W. 175; Chapman v. Clark (Tex. Com. App.) 276 S. W. 197. Our courts universally hold that, where a contract, on its face, is so extortionate and unconscionable as to raise a presumption of fraud, it requires but a small amount of evidence to justify setting same aside. 13. C. J. 366 states the rule as follows: "Where the inadequacy (of consideration for contract) is so gross as to shock the conscience and common sense of all men, it may amount both at law and in equity to proof of fraud, oppression and undue influence."

■ Our courts further lay down the general rule that, where a contract is obtained for an inadequate consideration by reason of a misrepresentation of law or fact, or by reason of the weakness of the mind of one of the parties, or by gross imposition or under circumstances of oppression which would justify a finding of undue influence, a court of equity will set the contract aside. Hume v. United States, 132 U. S. 406, 10 S. Ct. 134, 33 L. Ed. 393; 13 C. J. 366; Waterbury v. City of Laredo, 68 Tex. 565, 5 S. W. 81; Page on Contracts, Paragraphs 463–465, 468–470, 473, 614, 616, 617 and 636; White v. Carlton (Tex. Civ. App.) 277 S. W. 701; Commercial Jewelry Co. v. Braczyk (Tex. Civ. App.) 277 S. W. 754; Parker v. Solis (Tex. Civ. App.) 277 S. W. 714; King v. Wise (Tex. Com. App.) 282 S. W. 570; Prideaux v. Roark (Tex. Civ. App.) 284 S. W. 624; Id. (Tex. Com. App.) 291 S. W. 868.

■ In order for appellees to maintain their contention that the document of January 28, 1929, amounted to an accord and satisfaction, as a matter of law, it must appear without controversy that there was a bona fide good-faith controversy between the parties, and that the settlement was made in good faith and without fraud or without any statements or misrepresentations or overreaching on the part of appellees, which, in law, would amount to fraud, or bad faith. Ford v. Warner (Tex. Civ. App.) 176 S. W. 885, pars. 5 and 6; Nichols-Steuart v. Crosby, 87 Tex. 443, 29 S. W. 380; Simms Oil Co. v. American Rfg. Co. (Tex. Com. App.) 288 S. W. 163; Buford v. Inge Construction Co. (Tex. Civ. App.) 279 S. W. 513. Clearly, we think the trial court was in error in withdrawing this case from the jury and rendering judgment for the appellees. If, at the time the original deed was signed and delivered appellee was to pay appellant the $1,550 cash called for in the deed, and if it was represented to appellant that the purported vendor's lien note was worth its full face value and he accepted same on said representations, and if as a matter of fact said note was valueless, then, under the statute above quoted, as well as under the universal holdings of our courts, appellee would be responsible to appellant for the $1,500. If, at the time appellant signed the document of January 28, 1929, there was no bona fide dispute between the parties with reference to appellee Cliett owing appellant the $1,500 balance of the purchase price, or if, under the peculiar circumstances and conditions as revealed by the record, appellee did not act in good faith and thereby perpetrated a fraud upon appellant or took advantage of appellant's condition under such circumstances as in law amounted to fraud, said document should have been set aside.

■ Appellant further complained of the exclusion by the trial court of the letter written by appellee Cliett to appellant's attorneys, Shires & Armstrong, on October 31, 1928. That portion of the letter which states: "The allegations in your petition do not in any sense of the word state any of the truths as to the details of the closing of the sale of the property to me by King," and that portion which states: "I am not much informed as to what is on the statute books, but I do know that the law of custom is when two parties exchange properties for a paid consideration, the deal is considered closed and finished, and what the future results might be remains to be proven," should have been admitted in evidence as tending to impeach the testimony of Cliett to the effect that his dealings were not with appellant at all, but were with Thomas, and that he exchanged properties with Thomas and not with appellant.

■ Appellant complains of the action of the trial court in refusing to admit any portion of the letter written by the defendant H. H. Thomas to appellant's attorney G. L. Armstrong on April 2, 1929. It was error for the court to exclude that portion of the letter which reads: "No one need my deposition in the Cliett case as I am going to Waco when the case comes up and I will stand by Mr. Cliett till Hell freezes over so put that down in your cheap hat and forget it and don't never write me another letter," same being admissible for the purpose of tending to prove the conspiracy alleged to have existed between Thomas, Cliett, and Chapman.

■ Appellant complains of the action of the trial court in permitting appellee Cliett to testify that he conveyed a farm in Ellis county to Thomas, or conveyed it to whoever Thomas directed. We sustain this assignment. The deed is the best evidence as to when and to whom and what property was conveyed.

Appellant complains of the action of the trial court in excluding the answer to direct interrogatory No. 17 propounded to T. H. Vinson. We do not think that there was any error in the court's excluding said testimony, and said assignment is overruled.

Appellant complained of the action of the trial court in excluding direct interrogatory No. 11 propounded to the witness T. H. Vinson in answer to which Vinson testified, in substance, that he had examined the property against which the $1,500 note was in Fort Worth, and that same was not worth the first lien. This testimony was admissible tending to show that the note of $1,500 was valueless.

Appellant complained at the action of the trial court in excluding the testimony of the witnesses Mrs. Simmon and Mrs. Miret to the effect that, at the time appellant and wife signed the document of January 28, 1929, when appellee gave him the additional $100, appellant and wife were sick and in straitened circumstances and in dire distress. We think this testimony is admissible for the purpose of showing the condition appellant and his wife were in at said time as a circumstance to enable the jury to determine whether appellant was unduly influenced or overreached or whether fraud was perpetrated upon him by appellees by reason of his physical and financial condition.

As a matter of fundamental error the trial court was not authorized to render judgment in favor of defendants Thomas and Chapman. If said defendants had not been cited and were not in court, then a judgment could not have been rendered either for or against them. In view of the fact that the cause is to be reversed, we call attention of appellant to the fact that said defendants should either be cited to answer the amended petition, or a judgment of dismissal should be entered as to said two defendants.

For the errors indicated, the judgment of the trial court is reversed, and the cause is remanded.