**H.J. THYWISSEN, Appellant,**

v.

**Myrven H. CRON, Appellee.**

**No. 01–88–00945–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 22, 1989.

Annette T. Kolodize, Michael R. Waller, Sheinfeld, Maley & Kay, Houston, for appellant.

Jim D. Hamilton, David W. Anderson, Ross, Banks, May, Cron & Cavin, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION ON SECOND MOTION FOR REHEARING

EVANS, Chief Justice.

Our prior opinions in the case are withdrawn, and the following opinion is substituted. Appellant's motion for rehearing is overruled.

In February 1984, appellant H.J. Thywissen approached appellee Myrven H. Cron about forming a corporation to manufac-

ture shipping containers for the chemical industry. Thywissen would be chairman of the board and manage the business, and Cron would assist in sales and marketing. Thywissen proposed the new corporation acquire a division of an existing company, Krafcor, and told Cron he had arranged financing to purchase Krafcor's division for $250,000 in cash and a note for $283,000. The new entity would be a Subsection S corporation, and Thywissen and Cron would be partners and stockholders.

As a result of these negotiations, Thywissen and Cron did incorporate Flexbin Corporation, which purchased Krafcor's machinery and inventory for $150,000 in cash and a note for about $283,000. In accordance with their prior understanding, Thywissen and Cron together invested $250,000 in the new corporation. Thywissen invested $150,000 and received 60% of the stock, and Cron invested $100,000 and received 40% of the stock.

Thywissen testified that he handled the negotiations with Krafcor that resulted in Flexbin's acquisition of Krafcor's machinery and inventory. He said that during such negotiations, he became concerned that Flexbin's note might fall into the hands of an unfriendly competitor. To protect Flexbin, he said, he negotiated with Krafcor to put a provision in the sales contract that required Krafcor to give him notice of any sale, assignment, or transfer of the Flexbin note, and to offer him the opportunity to acquire the note on the same terms as a proposed sale, assignment, or transfer. Thywissen testified that if Krafcor later offered the note for sale, he intended to exercise the right of first refusal, which was taken in his name, and then convey the note to Flexbin. He said he negotiated the right of first refusal because Flexbin's reacquisition of the note would reduce its debt and make it a more valuable company. He said that he and Cron had discussed the transaction, and that he told Cron the right of first refusal was a way to protect Flexbin and would reduce Flexbin's debt.

On October 29, 1985, Thywissen and Cron entered into an agreement with Augusta Bag to sell their capital stock in Flexbin Corporation. At that time, Krafcor had filed a chapter 11 proceeding in the bankruptcy court, and Flexbin had made an offer to settle its debt to Krafcor for $92,-000. The sales contract with Augusta Bag provided that if either Flexbin or Thywissen and Cron were able to acquire the Krafcor note before the November 1, 1985 closing date, Augusta Bag would, in addition to making specified cash payments, issue promissory notes to Thywissen and Cron in amounts to be determined pursuant to a formula set out in the sales contract. The contract provided that if the Krafcor note was not acquired before the closing date, Thywissen and Cron would only receive the cash payments for their Flexbin stock, but that the right of first refusal could still be exercised after the closing date.

On December 5, 1985, the bankruptcy court approved the $92,000 settlement agreement between Flexbin and Krafcor, and Thywissen notified Augusta Bag, then the sole shareholder of Flexbin, of his intent to exercise his right of first refusal. After further negotiations, Augusta Bag agreed to pay Thywissen $184,000, and Thywissen agreed to acquire the Krafcor note by paying $92,000 to Krafcor as debtor in possession, and simultaneously, to deliver the Krafcor note to Flexbin for cancellation. Under the agreement between Thywissen and Augusta Bag, the remaining proceeds from the sale of the note ($92,000) would be retained by Thywissen. As a result of his transaction with Augusta Bag, Thywissen received a profit of $92,000.

On January 24, 1986, Thywissen met with Cron to discuss the division of the note proceeds. Cron testified that, based on Thywissen's earlier representations, he expected to receive 40% of the note proceeds. Thywissen took the position, however, that because the right of first refusal had been taken in his name, it was a personal right, not a corporate asset. He claimed that Cron had no legal right to any of the proceeds, and that he had only a "moral obligation" to Cron. He offered to pay Cron $7,213, as Cron's distributive

share of the net proceeds. He claimed he was due deferred salary and attorney's fees in a total amount of $73,800, which deducted from the $92,000 profit left about $18,000. Thus, his offer of $7,213 represented about 40% of $18,000. Cron insisted he was due 40% of $92,000, not 40% of 18,000.

The parties met again several days later, but neither changed his position about the proposed distribution. On January 29, 1986, Thywissen mailed Cron a check for $7,213, which contained a notation on its face, "Capital distribution in full." Cron cashed the check, and shortly thereafter hired an attorney and filed this suit alleging fraud, breach of contract, and by trial amendment, breach of fiduciary duty. Thywissen pleaded the affirmative defense of accord and satisfaction.

Before submitting the case to the jury, the court permitted Cron to file a trial amendment alleging Thywissen's breach of fiduciary duty, and ruled, as a matter of law, that the undisputed evidence showed the right of first refusal was a corporate asset and that a fiduciary relationship existed between Thywissen and Cron.

The case was submitted to a jury, which in response to special issues, found that on October 29, 1985, the date of the sales contract with Augusta Bag, Thywissen falsely promised Cron that he would share 60/40 in the proceeds of the promissory note. The jury also found that Thywissen's $7,213.60 payment to Cron was an accord and satisfaction, but the jury failed to find that Thywissen's payment was "under all the facts and circumstances" fair to Cron.

After the jury's verdict, Cron moved the court to disregard the jury's response to the issue on accord and satisfaction, arguing that the court's ruling regarding a fiduciary relationship, and Thywissen's failure to prove or obtain a finding that the accord and satisfaction transaction was fair, required entry of judgment in Cron's favor based on the jury's findings on the other issues. The court granted Cron's motion and entered judgment on the jury's verdict awarding Cron the sum of $74,514.88, plus prejudgment interest and attorney's fees.

In Thywissen's first five points of error, he complains that the trial court erred in disregarding the jury's affirmative finding of accord and satisfaction. He argues that because of the jury's finding of an accord and satisfaction, the jury's verdict on all other issues concerning Cron's claims were immaterial.

We overrule these points of error because we have concluded that the trial court did not err in its ruling that a fiduciary relationship existed between Thywissen and Cron, and because the jury's failure to find that Thywissen dealt fairly with Cron in the transaction precludes the defense of an accord and satisfaction.

■ Thywissen's own testimony shows that he negotiated the right of first refusal to benefit the Flexbin Corporation, with the prospect of increasing the value of the corporate stock. It is clear from Thywissen's admissions that the right of first refusal was acquired as a corporate asset, even though the right was taken in Thywissen's name. Based on the undisputed evidence, the trial court did not err in deciding, as a matter of law, that Thywissen, as the majority shareholder and chief executive officer of Flexbin, had the fiduciary obligation to deal fairly with Cron in connection with the right of first refusal, and with the profits resulting from the exercise of that right.

On oral submission in this Court, Thywissen's counsel conceded that a fiduciary relationship existed between Thywissen and Cron up until the time Thywissen and Cron sold their corporate stock to Augusta Bag and resigned as directors of Flexbin Corporation. Thywissen argues, however, that once he and Cron sold their stock to Augusta Bag, they no longer had any relationship, and he had no further fiduciary responsibility to Cron. He argues, that when he exercised the right of first refusal, he was justified in dealing with Cron as in any "arms length" transaction. In support of his position, he cites language from *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex.Civ.App.—Austin

1976, writ ref'd n.r.e.), to the effect that officers or directors are not bound to act for the benefit of a corporation or its stockholders in *non-corporate* matters, and may avail themselves of personal opportunities lying outside the field of their corporate responsibilities. *Id.* at 513.

We do not argue with the language in *Canion* as a general proposition of law. But that language does not apply here. In this case, when Thywissen exercised the right of first refusal, he was still dealing with a corporate asset, and he continued to have a fiduciary duty to deal fairly with Cron in the disposition of the profits resulting from the exercise of that right. *See Graham v. Turner,* 472 S.W.2d 831, 838 (Tex.Civ.App.—Waco 1971, no writ); *Greenspun v. Greenspun,* 211 S.W.2d 977, 982 (Tex.Civ.App.—Fort Worth 1948, writ ref'd).

Although Thywissen took the right of first refusal in his name alone, it is undisputed that he did so with Cron's consent and that both he and Cron then considered the right to be beneficial to the corporation, just as they considered the note a corporate obligation. Indeed, Thywissen testified that when he first negotiated the right of first refusal, he knew that its purpose was to benefit the corporation and that he could not then deal with it as his own. Moreover, according to Cron's testimony, and the jury's finding, Thywissen promised Cron, at the time of the Augusta Bag transaction, that the proceeds of the note would be be divided 60/40 in line with their respective stock ownership in the corporation. According to Cron, Thywissen continuously promised that the note proceeds would be so divided, and Thywissen never told Cron he intended to keep the proceeds for his personal benefit.

■ A corporate fiduciary cannot usurp corporate opportunities for personal gain, and if he derives personal benefit from dealing with corporate assets, such transactions will be given strict scrutiny. *International Bankers' Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576–77 (Tex.1963). It is well established that a fiduciary must act with utmost good faith and avoid any act of self-dealing that may place his personal interest in conflict with his obligation to the trust beneficiaries. *Slay v. Burnett Trust,* 143 Tex. 621, 639–40, 187 S.W.2d 377, 387–88 (1945).

■ Once a fiduciary relationship has been established, it is presumed to continue until it is repudiated. *See Burton Mill & Cabinet Works, Inc. v. Truemper,* 422 S.W.2d 825, 827–28 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.). The sale of Flexbin to Augusta Bag did not relieve Thywissen of his fiduciary responsibilities to Cron regarding corporate assets that remained in his possession or control. Until such time as the fiduciary relationship was repudiated by Thywissen, and notice of such repudiation communicated to Cron, Thywissen continued to be responsible, as a corporate trustee, for corporate assets in his hands. *See Greenspun,* 211 S.W.2d at 982. The evidence, at best, raised fact issues about Thywissen's repudiation, and because those issues were not presented to the jury, we do not consider them here. *See Langford v. Shamburger,* 417 S.W.2d 438, 446–47 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.).

■ To prevail on his affirmative defense of accord and satisfaction, Thywissen was required to prove and obtain a jury finding that: (1) a bona fide good faith controversy existed between himself and Cron; and (2) he acted in good faith in making the settlement with Cron and did not take unfair advantage of his fiduciary position. *King v. Cliett,* 31 S.W.2d 350, 354 (Tex.Civ.App.—Waco 1930, writ ref'd n.r.e.). The jury did not find that the settlement transaction was fair to Cron, and Thywissen does not contend that the jury's response to that issue is against the great weight and preponderance of the evidence, or that the affirmative of the issue was established as a matter of law. Accordingly, the trial court did not err in refusing to give effect to the jury's related finding on accord and satisfaction. *King,* 31 S.W.2d at 354; *see also Miller v. Miller,* 700 S.W.2d 941, 946 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

We accordingly hold that the trial court did not err in ruling that the jury's finding of accord and satisfaction was rendered immaterial by its finding that the transaction was unfair, and in refusing to give effect to the finding on accord and satisfaction. In view of this holding, we need not decide whether there was a bona fide dispute between Thywissen and Cron that would constitute a proper consideration for an accord and satisfaction. *See Ross v. Seip,* 154 S.W.2d 958 (Tex.Civ.App.—Texarkana 1941, writ ref'd w.o.m.).

We overrule Thywissen's first through fifth points of error.

In his sixth point of error, Thywissen argues that the trial court erred in rendering judgment for Cron for breach of fiduciary duty and fraud in the sale of stock because the judgment allowed Cron a double recovery.

The trial court awarded Cron judgment for $74,514. In answer to special issue no. 2, the jury found that the payment of $7,213 was not fair to Cron. Special issue no. 3 asked, "What sum of money, if any, if paid now in cash, would be fair to Myrven Cron under all the facts and circumstances of this case?" The jury answered, "$24,-514."

In special issue nos. 4 and 5, the jury found that Thywissen made false promises to Cron regarding the 60/40 distribution from the proceeds of the promissory note in question. In special issue no. 6, the jury was asked, "What amount of money, if any, if paid now in cash, would reasonably compensate Myrven H. Cron for his damages caused by the promises of H.J. Thywissen, if any?" The jury replied, "$5,000." The jury award also included $45,000 in attorney's fees. In answer to special issue no. 8, the jury awarded no exemplary damages.

Although a party may assert any and all causes of action he may have against another, he will be limited to only one recovery of damages. Tex.R.Civ.P. 48; *see Triland Inv. Group v. Warren,* 742 S.W.2d 18, 27 (Tex.App.—Dallas 1987, no writ). Here, the jury failed to find that the transaction was fair and found that it was based on false promises. Thus, Cron established a right to recovery based on theories of both breach of fiduciary duty and fraud in the sale of stock.

These two theories of recovery were based on the same facts and the same wrongful conduct by Thywissen. When asked, "So, what are you telling the jury you are owed today?" Cron replied, "$24,-514.88." The jury assessed no exemplary damages. Based on the facts and Cron's testimony, there was no basis for the jury to award Cron more than what he claimed his damages to be. Consequently, the trial court erred in awarding Cron $5,000 more than the damages he sustained.

If the trial court errs in computing damages, the amount of damages awarded can be reformed by the appellate court to conform with the pleadings and evidence. *Atlas Chem. Indus., Inc. v. Anderson,* 514 S.W.2d 309, 319 (Tex.Civ.App.—Texarkana 1974), *aff'd,* 524 S.W.2d 681, 688 (Tex.1975).

Thywissen's sixth point of error is sustained.

We have considered all contentions asserted in Thywissen's motion for rehearing, and except for clarifications made by this substituted opinion to our earlier opinions, we remain of the view that the holding in our earlier opinions is correct. We accordingly overrule all contentions on rehearing.

The trial court's award of $5,000 in damages against Thywissen is reformed to delete this amount, and as reformed, the judgment of the trial court is affirmed.

Thywissen's original and second motions for rehearing are overruled.