FIVE STAR TRANSFER & TERMINAL
WAREHOUSE CORPORATION et al.,
Appellants,

v.

Andy FLUSCHE et ux., Appellees.

No. 7236.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 6, 1960.

Rehearing Denied Sept. 27, 1960.

Sam Dawkins, Jr., Leffingwell, Dawkins & Oehmann, Dallas, for appellants.

Hughes, Donosky & McCracken, Joe H. McCracken, III, Dallas, for appellees.

FANNING, Justice.

Andy Flusche and wife sued Five Star Transfer and Terminal Warehouse Corporation, as well as Bill C. Smith and Dan McRea, both individually, and as partners, seeking to rescind, or to recover damages for $18,810 paid in on May 22, 1957 to defendants in exchange for 1,710 shares of stock in Five Star Transfer and Terminal Warehouse Corporation (less a certain credit by virtue of defendants repurchasing 500 shares of said stock from the Flusches), with the Flusches praying for judgment for a balance of $14,553. Briefly stated, the suit in essence was a fraud action against individuals and a business entity operated by such individuals as a partnership but showing on the surface to be a corporation.

Trial was to a jury upon special issues. Various fraud issues were found favorably to plaintiffs. The jury found that defendant Smith, prior to the purchase of the stock in question by Flusche, represented that the corporation was in good financial condition and was only indebted for current bills, that the corporation had an I.C.C. permit, and that the corporation was the owner of a considerable amount of trucks, tractors and trailers. The jury further found that each and all of these representations by Smith were false and untrue,

that Flusche believed and relied upon same, that the same induced Flusche to buy the stock in question, and that such representations were of material facts. The jury also found that the repurchase transaction whereby Flusche received $4,257 from defendants for 500 shares of stock was not in an alleged agreement for full satisfaction of Flusche's claim against defendants, and that Flusche had not thereby waived all future rights of action, if any, against defendants.

The jury in response to Special Issue No. 17 found that the reasonable market value of the stock in question in Dallas County, Texas, at the time of its delivery was $18,810. Prior to the submission of this issue plaintiffs filed their written objections thereto, and among the grounds therefor alleged to the effect that plaintiffs elected to pursue their remedy of rescission, and that it was an undisputed fact that plaintiffs suffered injury through the purchase of the stock in question.

Plaintiffs filed a motion for judgment on the verdict of the jury, and in this motion requested the trial court to disregard the jury's answer to Issue No. 17, stating in part as follows:

"Plaintiffs would further move the Court to disregard the jury's answer of '$18,810.00' to Special Issue No. 17, the reason that said issue is a damage issue and before submission of the charge to the jury, Plaintiffs attorney took exception and objection to the submission of said damage issue, advising the Court of his election to stand upon his remedy of rescission, as specifically set forth in Plaintiffs pleading, and it being undisputed that plaintiff suffered injury."

Defendants also filed a motion for judgment on the verdict of the jury.

The trial court evidently disregarded the jury's answer to Special Issue No. 17 as it rendered judgment for plaintiffs in the sum of $13,310, interest and court costs, against defendants, jointly and severally, condi-

tioned upon the plaintiffs tendering into the registry of the court the 1,210 shares of stock held by plaintiffs in said alleged corporation. The trial court in its judgment, preceding the decretal portions of the judgment, stated in part as follows: "And it appearing to the court, from a consideration of the pleadings, the jury's findings, all of the evidence, *and the undisputed issues*, that Plaintiffs are entitled to relief and judgment." (Emphasis added).

Appeal from the judgment of the trial court has been perfected by defendant corporation and by defendant Bill C. Smith. Defendant McRea has not appealed.

Appellants present three points on appeal. Their first point reads as follows: "The trial court erred in rendering and entering a judgment of rec*i*ssion in favor of plaintiffs because the jury affirmatively found that plaintiff sustained no damage which is an essential element of plaintiffs' case." Appellees counter with their first counterpoint as follows: "The trial court properly entered judgment for the Appellees because it was conclusively shown and undisputed that the Appellees suffered injury by virtue of the transaction in question, and for the further reason that there is no evidence to support the finding of the jury to the damage issue."

The undisputed testimony shows that at one time there was a corporation in existence by the name of Five Star Transfer and Terminal Warehouse Corporation, that the partnership of defendants Smith and McRea purchased the assets of said corporation, that the business of such entity was conducted as a partnership business by the partnership, that the assets of the entity were owned and held by the partnership, that the partnership signed a written partnership agreement when it borrowed money from a bank, and as a partnership gave mortgages on the motor vehicles of the partnership. The bank account of the entity was a partnership account and not a corporate account. It was also undisputed that the $18,810 paid by Flusche for the alleged "stock" in question was placed in the partnership account and in a short time thereafter was largely withdrawn and expended by the partnership. The alleged corporation at the time of the sale of the stock in question (nor at any time thereafter as shown by the record) had no bank account or assets of any character. Whatever was owned by the alleged entity was owned and held by the partnership, but on some occasions the entity was purportedly or ostensibly held out to be operating as a corporation, as when it sold "stock" in the entity represented to Flusche as a "solvent going corporation".

The material evidence amply supports the fraud findings of the jury, and such findings have not been attacked by appellants.

There was also no really genuine issue as to whether plaintiffs were damaged by paying $18,810 for the "stock" of the corporation that had no assets and was not a going concern. Even if the assets of the partnership could be considered as belonging to the corporation, which the evidence conclusively negatives, the evidence is conclusive that the partnership was clearly in a precarious and falsely represented financial condition when Flusche was induced to purchase the "stock" in question. Before Flusche purchased the stock, the partnership had a bank account of $2.42, and assets of questionable value, including heavily mortgaged rolling stock (which later was lost by foreclosure for nonpayment of indebtedness), and was in an unquestioned precarious and falsely represented financial condition, and Flusche's $18,810 was not put into the corporation but was put into the partnership bank account. Furthermore, Flusche was not given any interest in the partnership where his money went and which held the ostensible assets of the ostensible corporation, but Flusche was given for his money only the worthless stock in what was in truth and fact merely a "dummy corporation". We hold that the evidence was undisputed and conclusive that plaintiffs were damaged by the purchase of the worthless stock in question.

We further hold that the trial court did not err in disregarding the jury's answer to Special Issue No. 17 because it was not necessary for said issue to have been submitted in the first place as the evidence was undisputed and conclusive that plaintiffs suffered damages in the purchase of the worthless stock in question. The jury was evidently confused in answering Issue No. 17 as there was no evidence of probative force in the record which would have supported the jury's answer to such issue.

Since it was undisputed and conclusive that plaintiffs were damaged, both pecuniarily and otherwise, in purchasing the worthless stock in question, plaintiffs were clearly entitled to pursue their remedies of rescission and damages. Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1; Nance v. McClellan et al., 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117, opinion adopted by Texas Supreme Court.

Appellants' first point is overruled.

Appellants' second point reads as follows: "The trial court erred in entering a judgment of rescission against Bill C. Smith because the evidence is without contridiction that the stock was purchased by plaintiffs from Five Star Transfer & Terminal Warehouse Corporation."

We hold that the trial court was correct in entering judgment against defendant Smith because the evidence conclusively established that Smith actively participated in and benefited by the fraud perpetrated on plaintiffs by a corporate fiction.

■ The partaking of the benefits of a fraudulent transaction makes the participants principals and liable as such. 20–A Tex.Jur., Fraud and Deceit, Sec. 64, p. 124.

■ We agree with appellees that the theories stated in the case of O'Neal v. Jones, Tex.Civ.App., 34 S.W.2d 689, are applicable in that when a supposed or ostensible corporation is a mere "dummy" under the management of individuals who control

same in the form of a partnership, then the corporation and the partnership are mere alter egos, and the corporate veil should be pierced to effectively do justice to an injured party. In O'Neal v. Jones, supra, it was stated in part as follows:

"* * * In view of these allegations, established facts by stipulation, the corporate entity of the O'Neal Furniture Company must be ignored, and the corporation held to be simply the alter ego of O'Neal and Allen.

"In re Rieger et al, reported in D.C., 157 F. 609 a case in bankruptcy was under consideration, in which the assets of a corporation owned by the bankrupt firm were being administered as a part of the bankruptcy estate. The court announced the doctrine that a corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not, in a proper case, ignore its existence to preserve rights or circumvent fraud. Commenting on this decision, Wormser, in his work entitled 'Disregard of the Corporate Fiction and Allied Corporate Problems', at page 49 said: '* * * The argument, of course, was made in behalf of the bankrupt and the corporation that the corporation existed as a separate and distinct entity. The court brushed aside this contention and declared that the doctrine of corporate entity is "not so sacred" that courts, looking through shams and forms to the actual substance of things, may not ignore the concept in order to preserve the rights of innocent parties or to circumvent fraud. The corporation, it was pointed out, was organized merely to give these disingenuous individuals a double line of credit, and to hinder and delay their creditors in the event of insolvency. * * * The corporate organization was but an alter ego of the partnership. * * * One was subsidiary and auxiliary to the other. To allow the doctrine of corporate entity

to intervene would be to convert a court of justice into a public laughing-stock.' "

Appellants' second point is overruled.

 Appellants' third point reads as follows: "The trial court erred in overruling defendants' special exceptions and motions to suppress evidence on the allegations in Plaintiffs' Second Amended Original Petition of the dissipation of corporate assets by a partnership as such allegations were not material or relevant and were intended to inflame and prejudice the jury."

The allegations and proof sought to be suppressed by defendants' motion were simply those of the material facts in the transaction, as well as the allegations and proof of the true structure of the business entity involved, and were relevant and admissible. 20–A Tex.Jur., Fraud and Deceit, Sec. 115, p. 216. Appellants' third point is overruled.

The judgment of the trial court is affirmed.