**NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Appellant,**

v.

**ALLCO INSURANCE AGENCY, Appellee.**

No. 11390.

Court of Civil Appeals of Texas.

Austin.

May 4, 1966.

Rehearing Denied May 25, 1966.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellant.

Naman, Howell, Smith & Chase, George Chase, Waco, for appellee.

HUGHES, Justice.

This suit was by National Automobile and Casualty Insurance Company, appellant, against Allco Insurance Agency, a partnership, appellee,[1] seeking reimbursement for the amount paid by it to satisfy a claim on an insurance policy issued by it through appellee as its agent in Temple, Texas. The claim for reimbursement was based on allegations that appellee had failed to follow the instructions of appellant which would have resulted in cancellation of the policy before any liability on it arose.

Trial was to a jury which returned a verdict answering issues submitted to it favorable to appellee. Judgment was rendered that appellant take nothing by its suit.

Appellee was the agent of appellant under a written contract which provided, in part:

"1. The Company hereby grants authority to the Agent in the following territory, viz: <u>Temple, Texas and Vicinity</u> (but not exclusively) to solicit and submit applications for the classes of insurance and fidelity and surety bonds for which a commission is specified in the Commission Schedule which forms a part hereof; to issue and deliver policies, bonds, certificates, endorsements and binders which the Company may, from time to time, authorize to be issued and delivered; to collect and receipt for premiums thereon or therefor; to cancel such policies, bonds and obligations in the discretion of the Agent where cancellation is legally possible; and to retain out of premiums collected and paid over to the Company in accordance herewith, as full compensation on business placed with the Company by or through the Agent, commissions at the rates set forth in said Commission Schedule.

\* \* \* \* \* \*

The Agent assumes responsibility for and agrees to pay to the Company all premiums, whether advance, deposit, renewal, addition or excess payroll audit premiums, on policies, bonds, or other contracts of insurance or suretyship issued by or through him, whether direct or for the account of other producers, and whether collected by the Agent or not;

Provided, that if the Agent shall return to the Company for cancellation, or shall effect cancellation of any such contract of insurance or suretyship, or renewal thereof, within sixty days from the effective date of such contract, or renewal thereof, and shall file with the Company acceptable evidence of such cancellation,

---

1. This partnership is composed of Franky Lee Cagle, Rose Marie Watts and Robert Walter Watts.

then the Agency shall not be liable to the Company for the premium of any such contract if he is unable to collect same; and

Provided further, that if the Agent is unable to collect the premium on any such contract, or renewal thereof, which is cancelled after sixty days from its effective date, the Agent shall pay the pro rata premium from the effective date of such contract, or renewal thereof, to the date when the Agent files with the Company acceptable evidence of cancellation of such contract, or renewal thereof.

\*    \*    \*    \*    \*    \*

The Company reserves the right (a) to reject any risk submitted by the Agent, and the Agent shall not be entitled to any commissions on any such risk, and (b) to cancel direct any contract of insurance or suretyship at any time, but in the event of such cancellation the Company shall notify the Agent prior to giving notice thereof."

Appellee, as agent for appellant, submitted an application for an automobile garage liability insurance policy on one Benny Stovall, the policy period being from May 14, 1964 to May 14, 1965.

This policy provided, in part:

"This policy may be cancelled by the company by writing to the named insured at the address shown in the policy a written notice stating that, when, not less than ten days thereafter, such cancellation shall be effective."

In issuing the policy appellant wrote appellee that this business was accepted "subject to a favorable inspection report" on all drivers. The report on Mr. Stovall was bad in that he had too many speeding tickets and too many other violations and two accidents in his lifetime, and on July 14, 1964, appellant wrote appellee so informing it and requesting, "Please return the cap-

tioned policy for cancellation within the next ten days."

On July 21, 1964, appellee[2] replied to appellant and, after making a plea for Mr. Stovall, stated, "Will you please reconsider your request for cancellation and advise \*  \*  \*."

On July 31, 1964, appellant replied to appellee and concluded, "We regret very much that we must request the return of the policy for cancellation once more."

On August 14, 1964, appellant again wrote appellee advising it that unless the Stovall policy or "other valid cancellation evidence" was received in five days it would send direct notice of cancellation to the insured.

On August 19, 1964, appellee wrote appellant regarding the Stovall policy as follows: "Coverage written this date with the Western Alliance Insurance Company, Austin, Texas this date replaceing the above policy. Your policy will be place_ in the mail Friday August 21, 1964 cancelled effective August 19, 1964."

In truth, no such insurance was procured by appellee, nor was the policy with appellant mailed in or cancelled.

On August 28, 1964, appellant sent direct notice of cancellation to the insured effective September 9. Nothing more transpired between the parties between August 19, 1964 and September 8th, 1964, when Benny Stovall had an accident which resulted in payment of $9,500.00 by appellant in damages.

The evidence shows that appellee tried unsuccessfully to place the Stovall insurance with other companies.

Appellant pled that appellee was estopped to deny liability by the letter of August 19, from appellee to appellant, above quoted, and the jury made these findings regarding such plea: (1) Appellant was led thereby to believe that other insurance had been procured replacing its policy. (2) Appellant

**2.** All letters for appellee were written by Robert Walter Watts.

was led thereby to believe that its policy had been cancelled effective August 19. (3) Appellant relied on such letter in believing that other insurance had been procured and that its policy would be cancelled effective August 19. (4) Appellant did not have a right to rely on such letter after the Stovall policy had not been received by it by August 25, 1964.

Many other issues were submitted to and answered by the jury. These issues were requested by appellee and were submitted on the theory that this was a negligence case and that contributory negligence by appellant was a defense to the action. We will not set out these issues for the reason that we are of the opinion that contributory negligence on the part of appellant is not a defense to it.

Appellant did plead that appellee was negligent in failing to cancel such policy or in failing to return such policy for cancellation but no issues of primary negligence were tendered or submitted to the jury and attempted recovery on such grounds was abandoned. Appellant also pled that it had requested appellee to cancel such policy or return it for cancellation and that appellee had failed to do either and that for such failure appellee was liable to appellant as a matter of law for ensuing damages.

It is this latter pleading together with the plea of estoppel which, in our opinion, controls the nature of the case in this Court.

Unless appellee was under a duty as agent for appellant to cancel the Stovall policy its failure to do so, in the absence of fraud or estoppel, would not be actionable. If it did have such duty then it was the result of contractual relations between the parties and a breach of such duty would be a breach of contract.

There are cases which hold that a breach of contract may give use to a tort action as well as for breach of contract. Westbrook v. Watts, Tex.Civ.App., 268 S.W.2d 694, Waco, writ ref., n. r. e.

It is sufficient here to say that since appellant has waived his suit based on negligence that there can be no defense of contributory negligence interposed by appellee.

In Washington v. Mechanics and Traders Ins. Co., 174 Okl. 478, 50 P.2d 621, the Supreme Court of Oklahoma considered a case in which the Insurance Company instructed its agent to cancel a policy he had sold and delivered. The agent did not obey, a loss occurred and the company sued the agent and in holding him liable the Court stated:

"The neglect and failure of the agent, Edmondson, to carry out the instructions of plaintiff company, to cancel the Sallie Young policy, for more than five weeks, was not the exercise of good faith and reasonable diligence, as to which reasonable men could differ, and the fact that the plaintiff company had the same authority to cancel the policy would not excuse or justify the agent, Edmondson, in failing or refusing to allow its instructions.

This principle was laid down in 22 Cyc. 1438, which reads as follows: 'So if the agent is directed by the company to cancel a policy and neglects to do so, and there has been a loss, he is liable to the company for the amount which the company has had to pay on such loss, notwithstanding contributory negligence of the company in failing to cancel the policy itself.'

In Westchester Fire Ins. Co. v. Bollin, 106 S.C. 45, 90 S.E. 327, it was held: 'It is no defense to an action for an insurance agent's failure to cancel a policy that the special agent who directed its cancellation had power to cancel it.' At page 328 of 90 S.E., 106 S.C. 45, the court said: 'A man had the right to transact his own business. He has the right to employ as many agents and give them as much power as he pleases. When one agent undertakes to do a certain piece of work, he cannot relieve himself of responsibility by showing that there were other agents who had the same power.'"

Other authorities to the same effect are American Insurance Co. of Newark, N. J. v. Martinek, 203 Mich. 108, 168 N.W. 982, Michigan Supreme Court, St. Paul Fire and Marine Insurance Co. v. Bigger, 105 Kan. 311, 182 P. 184, Kansas Supreme Court.

We quote the following from 44 C.J.S. Insurance § 158, as indicative of the liability of an insurance agent under circumstances present in this record:

"Where an agent, whose powers extend to the cancellation of policies, is directed by the company to cancel a policy, and he neglects to do so within a reasonable time and in the meantime there has been a loss, he is liable to the company for the amount which the latter is compelled to pay on such loss, unless he can show some valid reason for his failure to follow the company's direction. His delay or failure to cancel the policy will not be excused by the fact that he believed that the company was mistaken as to the safety or danger of the risk, or as to the wisdom of retaining it, or by the fact that he requested the company to reconsider its order to cancel, or because the act of cancellation is gratuitous, or by the fact that he gave notice of the cancellation to the broker who negotiated the insurance and directed him to cancel it, or that a special agent who directed it had power to make the cancellation, or by the fact that the company did not itself proceed to cancel the policy on the failure of the agent to do so in accordance with his instructions. If the agent, when directed to cancel the policy, undertakes to do so, he cannot deny his obligation after the company has suffered a loss through his failure to make the cancellation."

See Superior Fire Ins. Co. v. C. S. Lee Grain and Elevator Co., Tex.Civ.App., 261 S.W. 212, El Paso, n. w. h., Phoenix Ins. Co. v. Heath, 90 Utah 187, 61 P.2d 308, 106 A.L.R. 1391, Utah Supreme Court.

It is appellee's position that it was not authorized to cancel policies of insurance issued by appellant, and that it was never requested to cancel the Stovall policy.

It is our opinion that the agency agreement between the parties clearly gave to appellee authority to cancel all policies, bonds or obligations which were issued or written by or through it at its discretion. This authority was essential to the agent for the reason that the agent was responsible for premiums, collected or uncollected.

■ There is no specific language in the agency agreement which authorizes or requires the agent to cancel policies at the direction of the company. The company does, however, expressly reserve the right to reject any risk submitted by the agent. The retention of this right necessarily includes all reasonable means of making it effective. The most practical method, it seems to us, would be to notify the agent of the rejection and request cancellation of the policy.

■ In any event, the parties here have placed a construction of the agency agreement in accordance with this interpretation of it by their acts and conduct and, in our opinion, are bound by such construction. 13 Tex.Jur.2d, Contracts, Sec. 128.

This practical construction of the agency agreement by the parties extends not only to the right of the company to require its agents to cancel policies where the risk was unsatisfactory but also to the method of cancellation. The company could, as the agreement provides, cancel direct, but the parties have acted to include other methods.

Appellant wrote to appellee requesting return of the Stovall policy for cancellation. Appellee answered by asking a reconsideration of the "request for cancellation." Appellant, in reply, again requested "return of the policy for cancellation." A few days later appellant wrote to appellee that if the "original policy or other valid cancellation evidence" was not forthcoming direct notice of cancellation would be sent the insured. Five days later appellee wrote ap-

pellant that the Stovall policy would be mailed August 21 "cancelled effective August 19."

■ These communications conclusively establish, in our opinion, the understanding of appellee that it was to effect cancellation of the Stovall policy and that the method of cancellation was left to its discretion.

It is to be noted that appellee did not state that the policy was being returned for cancellation by the company but rather it would be mailed after its prior cancellation.

■ It is our opinion that appellant acted within the scope of its agreement with appellee in directing it to procure cancellation of the Stovall insurance policy and that appellee knowingly and dutifully undertook to bring this about but that, as a matter of law, it failed to discharge its duty in this regard and is responsible to appellant for the consequences of such failure.

■ We are also of the opinion that appellee is estopped to deny its liability to appellant for the loss sustained by it under the Stovall policy because of the false representation to appellant that the Stovall policy had been cancelled, upon which representation appellant relied to its injury.

The jury answer that appellant did not have the right to rely on such letter after the Stovall policy was not received by August 25 is, we believe, without any evidence to support it.

Nothing transpired between the parties regarding the Stovall policy between August 19 letter and the arbitrary date of August 25. This period was marked only by the passage of time. The trial court and the jury gave appellant six days, at most, in which to make up its mind that appellee was not telling the truth, and to take action.

It is to be noted that the date fixed by the court and jury is just three days prior to the date on which appellant did cause direct notice of cancellation to be issued to Stovall.

Of course, if the policy had been mailed as promised it would have been received by appellant before August 25. Was appellant to assume because of the non-receipt of the Stovall policy by August 25, and nothing more, that all of the representations made in the August 19 letter were false? We believe that appellant had the right to assume the truthfulness of factual statements of past events i. e. "coverage written this date * * * replacing the Stovall policy" and "Cancelled effective August 19, 1964," without being alerted to their falsity by the non-performance of the promise to mail the policy on August 21st. The cancellation of the policy was the primary concern of appellant, not its timely mailing.

■ Persons who make material false representations as to matters in which they have an interest with the knowledge that such false representations will be accepted and acted upon as true by the persons to whom they are made, are not to be excused from their wrongful conduct by tenuous argument, strained logic, or misplaced sympathy.

■ While the issue finding that appellant had no right to rely upon the August 19 letter after August 25 is not couched in negligence or contributory negligence terms, the principle applicable is the same. It is well settled that contributory negligence is no defense to a suit based on fraud, an essential element of estoppel. We quote the following from Southern States Life Insurance Company v. Newlon, Tex.Civ.App., 398 S.W.2d 622, Eastland, application for writ of error filed:

"We agree with appellee that the contributory negligence of Newlon is not a defense to this action based on fraud and and that a fraud-feasor cannot excuse his fraudulent acts by asserting that the defrauded person was unduly credulous and guilty of contributory negligence in believing the fraudulent statements made to him. We think the ap-

plicable law is stated in 37 C.J.S. Fraud § 30, page 274 as follows:

'While it has been stated that there is a duty on the part of the representee to use some measure of protection and precaution to safeguard his interest, and that in dealing at arm's length with the other party he must avail himself of the means of knowledge readily within his reach, see infra § 34, the rule has been enunciated that contributory negligence of the representee is no defense to an action based on fraud. Since the very purpose of fraud is to cheat its victim by making him negligent the precautions essential to prevent injury, and to deny relief because the victim was negligent would encourage dishonesty, and it is held that the fraud-feasor will not be heard to say that he is a person unworthy of belief and that plaintiff was negligent in trusting him and was cheated through his own credulity.' "

We also quote from City of Houston v. Howe & Wise, Tex.Civ.App., 373 S.W.2d 781, Houston, writ ref., n. r. e.:

"This rule seems to have been adopted in Texas for the first time by the Supreme Court in Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808, and was clearly stated by Justice Speer in Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ.App. 513, 101 S.W. 1061, as follows:

'It is not the rule that a person injured by the fraudulent and false representations of another is held to the exercise of diligence to suspect and discover the falsity of such statements. In the absence of knowledge to the contrary, he would have a right to rely and act upon such statements, and certainly the wrongdoer in such a case cannot be heard to complain that the other should have disbelieved his solemn statements.'

This statement of the rule is well supported by authority. Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141; Moore v. Beakley, Tex.Com.App., 215 S.W. 957; Graves v. Haynes, Tex.Com. App., 231 S.W. 383; Wortman v. Young, Tex.Com.App., 235 S.W. 559; Guaranty Bond State Bank v. Kelley, Tex.Com. App., 13 S.W.2d 69; Crofford v. Bowden, Tex.Civ.App., 311 S.W.2d 954, writ ref.; Smith v. Bifano, Tex.Civ.App., 330 S.W.2d 473, writ ref., n. r. e.; Wren v. Bohannon, Tex.Civ.App., 256 S.W.2d 112; Schonrock v. Taylor, Tex.Civ.App., 212 S.W.2d 260, writ ref. It is unlikely that the statement in Thigpen v. Locke, supra, the Supreme Court of Texas intended to change this well established rule of law and we are unable to say that appellee had knowledge of facts demonstrating the falsity of the representation which the jury found Baldwin made to him. Under the circumstances of this case, there was no duty on appellee to investigate for the purpose of learning the truth of the representation."

■ Under these authorities, it is our opinion that appellant did not lose the right to rely upon the factual, as distinguished from the promissory statements, in the August 19 letter by August 25 or August 28. The fact that the Stovall policy was not received within these dates did not we hold, as a matter of law, charge appellant with knowledge of the falsity of the statements in the letter that other coverage had been obtained and the Stovall policy cancelled.

We reverse the judgment of the trial court and render judgment against appellee for the sum of $9,500.00, with interest from this date at the rate of 6% per annum and for all costs in this behalf expended. This judgment will be against the individual members of the appellee partnership.

Reversed and rendered.