**CORPUS CHRISTI AREA TEACHERS CREDIT UNION, Appellant,**

v.

**Rogelio HERNANDEZ & Ludivina Hernandez, Appellees.**

**No. 04–90–00668–CV.**

Court of Appeals of Texas, San Antonio.

July 24, 1991.

Rehearing Denied Aug. 20, 1991.

Michael B. Schmidt, Corpus Christi, for appellant.

L.H. Warburton, Jr., Perkins, Oden, Warburton, McNeill, Adami & Paisley, Alice, for appellees.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

Appellant, the Corpus Christi Area Teachers Credit Union, appeals an adverse judgment in favor of appellees, Rogelio Hernandez and Ludivina Hernandez. The dispute arose when Gene Allen Jones and the appellant allegedly defrauded appellees, obtaining title to appellees' 77 acres of land for a mere $4,000, when the appellees paid $50,050 for the land in 1983. Appellant presented no witnesses on its behalf during trial. Although appellant never denied that Jones perpetrated a fraud upon the appellees, it contends on appeal that it was not a party to any fraud, and asserts thirty-seven points of error, which we conclude present the following issues:

1) Whether there is no evidence or insufficient evidence to sustain the jury findings of fraud;

2) Whether the court erred in its charge;

3) Whether there is no evidence or insufficient evidence to sustain the jury findings on damages, or whether the damages findings are so grossly excessive as to require remittitur;

4) Whether the trial court erred in refusing to permit appellant to file appellant's Fourth Amended Original Answer and Special Exceptions on the eve of the trial; and,

5) Whether the trial court erred in overruling appellant's motion for directed verdict as to appellee, Ludivina Hernandez.

Initially, appellant contends that there is no evidence or insufficient evidence to sustain the jury finding of fraud against the Credit Union in Issue No. 1. The entire charge presented to and answered by the jury, was as follows:

### Question No. 1

Do you find from a preponderance of the evidence that in connection with the transactions at or prior to the signing of the documents in question at Neel Abstract Co. that Defendant Credit Union, was guilty of fraud?

You are instructed that "fraud" constitutes (1) false representation, concealment or failure to disclose material facts; (2) that the person responsible for the representation or concealment knew it was false, or made it recklessly without any knowledge of its truth as a positive assertion; (4) that it was relied upon; (5) that injury resulted. Answer "Yes" or "No".

Answer: *Yes*

If you have answered the foregoing Question No. 1 *yes*, then answer the following Question Nos. 2 & 3. Otherwise, do not answer Question Nos. 2 & 3.

### Question No. 2

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Rogelio Hernandez for damages, if any, resulting from the occurrence in question?

Answer in dollars and cents, if any. Answer: *$50,000*

### Question No. 3

What sum of money, if any, should be assessed against Corpus Christi Area Teachers Credit Union as exemplary damages?

"Exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages.

Answer in dollars and cents, if any. Answer: *$150,000.*

In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965).

In considering a factual sufficiency point, we may not substitute our judgment for that of the jury, but must assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (great weight and preponderance); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Further, courts have emphasized that:

[i]n considering an 'insufficient evidence' point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony.

*Texas Employers' Ins. Ass'n v. Jackson*, 719 S.W.2d 245, 249–50 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), citing *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 289 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

The elements of actionable fraud in Texas are: "(1) that a material representation was made;" (2) "that it was false;" (3) "that when the speaker made it, he knew it was false or made it recklessly as a positive assertion without any knowledge of its truth;" (4) "that he made it with the intention that it be acted upon by the party;" (5) "that the party acted in reliance upon it;" (6) "and that he thereby suffered an injury." *Voskamp v. Arnoldy*, 749 S.W.2d 113, 119 (Tex.App.—Houston [1st Dist] 1987, writ denied), citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). "A jury finding of recklessness is sufficient to establish a basis for misrepresentation of facts." *Trenholm*, 646 S.W.2d at 930.

"In determining issues of fraud courts allow a wide latitude, and the evidence thereon may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, explain the acts of the parties, or throw light on their objects and intentions", remaining cognizant that "[f]raud is deductible from artifice and concealment as well as from affirmative conduct of a character to deceive." *Campbell v. Booth*, 526 S.W.2d 167, 169 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.).

Further, "the rule that a party in interest may become liable by mere silent acquiescence for the fraudulent misrepresentations of a third party" is recognized in Texas. *See Beazley v. McEver*, 238 S.W. 949, 952 (Tex.Civ.App.—Dallas 1922, no writ). "The partaking of the benefits of a fraudulent transaction makes the participants principals and liable as such." *Five Star Transfer & Terminal Warehouse Corp. v. Flusche*, 339 S.W.2d 384, 387 (Tex. Civ.App.—Texarkana 1960, writ ref'd n.r.e.). "Each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the fraudulent scheme," and "all who participate are liable for the fraud, ... irrespective of proof that they shared in the profits, for the gravamen of the action is injury to plaintiff and not benefit to defendant." *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.) (citations omitted).

■ A presumption of fraud is raised when the evidence discloses a extortionate and unconscionable contract. *Fults v. Duren*, 427 S.W.2d 951, 955 (Tex.Civ.App.— Houston [1st Dist.] 1968, writ ref'd n.r.e.). "Our courts universally hold that, where a contract, on its face, is so extortionate and unconscionable as to raise a presumption of fraud, it requires but a small amount of evidence to justify setting same aside," and "13 C.J. 366 states the rule as follows: 'Where the inadequacy (of consideration for contract) is so gross as to shock the conscience and common sense of all men, it may amount both at law and in equity to proof of fraud, oppression and undue influence.'" *King v. Cliett*, 31 S.W.2d 350, 354 (Tex.Civ.App.—Waco 1930, writ ref'd). "Our courts have uniformly held that, where a party, through fraud, obtains title to land, all those who participated therein or who received benefits therefrom are liable in damages to the party defrauded." *Id.* at 353.

"Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care." *Isenhower v. Bell*, 365 S.W.2d 354, 357 (Tex.1963); *see also Trenholm*, 646 S.W.2d at 933. "Indeed, in Texas, the doctrine has been carried to the length of protecting innocent victims who showed childlike faith in relying on misrepresentations of those who, as has been said, led them like lambs to the slaughter." *Blaine v. Lowery*, 157 S.W.2d 713, 716 (Tex.Civ.App.—Dallas 1941, no writ). Therefore, "[i]t is well settled that contributory negligence is no defense to a suit based on fraud, an essential element of estoppel." *National Auto. & Casualty Ins. Co. v. Allco Ins. Agency*, 403 S.W.2d 174, 179 (Tex.Civ.App.—Austin 1966, no writ). Further, it is recognized that where a claimant "has waived his suit based on negligence that there can be no defense of contributory negligence interposed by the [the defendant]." *Id.*, at 177.

It is also well settled in Texas, that "[i]nferences may be drawn from actual facts proved." *Beazley*, 238 S.W. at 952. Moreover, "[f]ailing to produce evidence within its control or to call its own officers and employees or [a party's] field representative raise[s] a presumption or inference that such evidence and testimony, if produced, would have been unfavorable to [the same party] on the challenged findings." *John Deere Co. v. May*, 773 S.W.2d 369, 377 (Tex.App.—Waco 1989, writ denied).

■ The evidence, together with proper inferences and presumptions, viewed in the light most favorable to the verdict, reflects that the appellees utilized all their savings to purchased the 77 acres in question for $50,050 in 1983; that appellees made improvements on the land; that in June of 1986, financial problems forced the appellees to seek a $4,000 loan in response to an newspaper advertisement placed by Gene Allen Jones (hereinafter "Jones") which promised loans without credit checks; that Jones, being unable to make a loan in the amount of $4,000, attempted and failed to obtain the loan for the appellees from La Hacienda Savings and Loan; that on August 8, 1986, appellees signed a farm and

ranch earnest money contract believing that they were putting their 77 acres up only as collateral for the $4,000 loan; that the appellees had no knowledge, during the entire transaction, that they were selling their land; that appellees did not hear from Jones again until November 12, 1986, when Jones told them to follow him to Neel Abstract Company in Laredo to sign documents which appellees believed were for the $4,000 loan; that unknown to the appellees, on August 18, 1986, Jones had contacted appellant's president, David Whitehurst, for the purpose of assuming seven separate loans made by appellant to Chuck Williams, totaling over $250,000, and involving several unoccupied rental properties requiring considerable repair; that the monthly payments on these loans that Jones wanted to assume amounted to over $3,000; that Whitehurst was cautioned from within the credit union that a review of the application indicated that no internal controls should be bypassed, nor should special treatment be extended to Jones; that, apparently, in early September of 1986, prior to the assumption being approved by appellant, Jones' request for an additional unsecured loan to repair the Williams' unrented properties was rejected by Whitehurst, who insisted on some security; that Jones misled Whitehurst to believe that he owned appellees' 77 acres in Duval County, which appellant later discovered was really owned by the appellees; that although Jones misled Whitehurst as to the ownership of the 77 acres, Jones was, nevertheless, permitted by appellant to make an application with appellant for a loan to purchase the 77 acres he had originally falsely indicated to Whitehurst he owned; that appellant ordered and obtained an appraisal of the 77 acres on October 24, 1986, which reflected an appraisal value of $28,000; that appellant required an executed earnest money contract on all such transactions; that the farm and ranch earnest money contract originally executed by appellees and Jones on August 8, 1986 for the sole purpose of securing the $4,000 loan, was permitted to form the basis for appellant's loan to Jones to, allegedly, fraudulently deprive appellees of their 77 acres; that this farm and ranch earnest money contract, executed by Jones and appellees on August 8, 1986, was discovered, during depositions, in appellant's files in a clear and noticeably altered condition with numerous alterations and discrepancies; that the alterations included white-outs and superimposed questionable figures, allegedly not present when the document was signed on August 8, 1986, and which could only have been superimposed or inserted after the date of the appraisal which formed the basis for the superimposed figures; that a copy of the same original farm and ranch earnest money contract, which was kept by the appellees at the time of the signing in August, clearly established the alteration of the original document; that although the obviously altered earnest money contract was discovered in that condition in the appellant's file during deposition, Whitehurst disclaimed any connection with the altered instrument, insisting that appellant's employee, loan officer Theresa Wyles, could establish a lack of connection between appellant and the altered farm and ranch earnest money contract; that appellant, however, failed to present Theresa Wyles, who appellees were unable to serve with a subpoena, or any other witness in their defense; that on October 30, 1986, appellant received a title commitment from the title company, wherein it was stated that the appellees intended to use the 77 acres as security for a loan; that in spite of the warnings Whitehurst received from within the credit union, its attorney, the altered earnest money contract, the title commitment, and the initial false representations by Jones that he was the owner of the 77 acres, appellant, nevertheless, permitted Jones to deliver appellant's checks to the title company and appellees and to be in general control of the closing of the transaction, thereby permitting the continuation of the deception upon the appellees; that the settlement statement contained several unexplained figures, including an indication that the appellees received an amount as earnest money, which, in fact, the appellees never received; that the questionable figures in the settlement statement, which must have been provided or

endorsed by the appellant and which conveniently resulted in a net $4,000 figure for appellees, made it possible for Jones to continue deceiving the appellees into believing that the $4,000 net was the loan they had sought from the first meeting with Jones and at the signing of the earnest money contract in August of 1986; that although the transaction documents indicate the purchase price for the 77 acres was $28,000.00, the appellees only received $4,000; that the appellant issued a check in the amount of $19,600 to the title company with specific instructions that the balance (amounting to $12,900.36), after expenses and appellees' amount of $4,000, was to be returned to appellant and made payable to both Jones and appellant; that this $12,900.36 was, apparently, associated with the loan appellant was to make to Jones in conjunction with the repair of the damaged houses involved in the Williams loans that Jones was to assume; that although Jones made his application with appellant to assume the Williams loans back in August, it was not until Jones made the formal application with appellant, for the purchase of the 77 acres from the appellees that the appellant almost immediately approved the assumption, by Jones, of over $250,000 in loans on the Williams notes; and, that although the appellant customarily insisted that all documents to their transactions be free of any alterations whatsoever, appellant, nevertheless, accepted the clearly and noticeably altered farm and ranch earnest money contract on the transaction involving the 77 acres, which had been signed by the appellees much earlier on August 8, 1986.

The record further shows the following: that Jones was in such a financial bind that he was not only unable to lend the appellees the $4,000 they sought but also eventually went bankrupt; that the appellant received warning signals from within the credit union and by its attorney; that Jones misled Whitehurst to believe that he was the owner of the 77 acres when, in fact, the property belonged to the appellees; that the basis for the loan in question was an obviously altered earnest money contract executed much earlier in August which ap-

pellant customarily rejected; that a title commitment, received by appellant, clearly indicated that appellees' purpose was to obtain a loan and not to sell their property; that the title company provided appellant with a settlement statement and other associated transaction documents containing questionable unexplained figures clearly showing that although the property was appraised at $28,000, the appellees received only $4,000; appellant, nevertheless, not only approved and followed through with the loan to Jones on appellees' 77 acres, but also approved the assumption, by Jones, of over $250,000 in loans based on the Williams notes.

Thereafter, Jones had the appellees sign a lease agreement, which appellees believed was associated with the $4,000 loan, and commenced collecting $120 per month from the appellees. Jones went bankrupt in July of 1987, after receiving over $1,000 in payments from the appellees, and appellant foreclosed on appellees' 77 acres. In summary, in return for the amount of $4,000, over $1,000 of which was paid back to Jones, appellees lost title to appellant to their 77 acres of land, which originally cost appellees $50,050.

Considering the appropriate standards of review, proper inferences, and proper presumptions, we hold that the evidence is sufficient to support the jury findings of fraud against the appellant; additionally, we find that the evidence is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *E.g., Pool,* 715 S.W.2d at 635; *Garza,* 395 S.W.2d at 824; *John Deere Co.,* 773 S.W.2d at 377; *Fults,* 427 S.W.2d at 955; *Beazley,* 238 S.W. at 952.

Appellant next complains about the charge of the court in numerous points of error. However, because appellant is required to preserve error by specific objections prior to the reading of the charge, we will address only those complaints to the charge which were properly preserved with timely and specific objections. *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985). The record

reflects that prior to the reading of the charge, appellant properly objected to the charge as follows:

1) the charge should contain an issue on contributory negligence of the appellees;

2) the charge failed to inquire whether the appellant had a legal duty to appellees or legal relationship to Jones to make it responsible for the fraudulent acts of Jones;

3) the charge failed to inquire whether there existed a confidential or fiduciary relationship between appellant and appellees; and,

4) the definition of fraud in the charge erroneously included "concealment and failure to disclose."

Texas law has provided for the duty of the trial court in submitting issues as follows: "First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and, third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue." *Texas & Pac. Ry. Co. v. Davis*, 374 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r.e.); TEX.R.CIV.P. 271, 272, 273. Therefore, what explanations and definitions of legal terms may be necessary to enable the jury to answer each issue is within the sound discretion of the court. Consequently, reversal will not lie because of an instruction being included or refused, in the absence of a showing of a clear abuse of discretion. "In a closely contested ... case it is error to burden the jury with excess instructions which emphasize extraneous factors to be considered in reaching a verdict," and the error is harmful when it becomes "a comment on the weight of the evidence and the case as a whole." *First Intern. Bank in San Antonio v. Roper Corp.*, 686 S.W.2d 602, 605 (Tex.1985); *Acord v. Gen. Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984).

In order to preserve error, "[a] party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." *Aero Energy, Inc.*, 699 S.W.2d at 822, citing TEX. R.CIV.P. 274. The party making an objection to the charge must obtain a ruling from the court, but "if an objection is articulated [distinctly] and the trial court makes no change in the charge, the objection is, of necessity, overruled." *Acord*, 669 S.W.2d at 114.

The record clearly reflects that the appellees abandoned their negligence cause of action, and where an appellee "has waived his suit based on negligence, ... there can be no defense of contributory negligence interposed by [the appellant]." *National Auto. & Casualty Ins. Co.*, 403 S.W.2d at 177. Further, "[i]t is well settled that contributory negligence is no defense to a suit based on fraud, an essential element of estoppel." *Id.* at 179. Appellant's complaint, that the charge should have inquired about the appellees' contributory negligence is rejected.

■ Appellant also complains that the charge failed to inquire whether the appellant had a duty to the appellees, whether Jones was an agent of appellant, and whether appellant had a fiduciary or confidential relationship with the appellees.

Clearly, everyone has a duty not to defraud anyone else, which is obvious from the nature of the definition of fraud. Appellees went to the jury on the theory that the appellant was guilty of actively participating, along with Jones, in the fraud perpetrated upon the appellees. The appellant defended by contending that it did not actively participate with Jones in the fraud, and consequently, it could only be liable if Jones was their agent, or if it had a fiduciary relationship with the appellees. Appellees, apparently, chose not to pursue the theory of guilt due to agency or a fiduciary relationship, and relied entirely on their assertion that the appellant was guilty of active fraud, which they had a right to do. However, since appellees chose to pursue only the theory that appellant actively participated in the fraud with Jones, it was not necessary and confusing for the court to inquire as to agency or fiduciary relationship.

Further, under the theory pursued by the appellees, whether the jury believed that

the appellant actively participated in the fraud or not was critical to the verdict. Consequently, any instructions on agency or fiduciary relationship would have been "excess instruction which emphasized extraneous factors to be considered in reaching the verdict," and because it would have emphasized the contentions of one of the parties to the detriment of the other, it would have been an improper comment on the weight of the evidence. *First Intern. Bank in San Antonio,* 686 S.W.2d at 602. The appellant has failed to show an abuse of discretion by the trial judge in refusing the requested instructions. The points are rejected.

Finally, appellant asserts that the trial judge abused his discretion by erroneously defining fraud in the charge to include "concealment and failure to disclose material fact."

■■■ "In determining issues of fraud courts allow a wide latitude" remaining cognizant that "[f]raud is deductible from artifice and concealment as well as from affirmative conduct of a character to deceive." *Campbell,* 526 S.W.2d at 169. "A party in interest may become liable by mere silent acquiescence for the fraudulent misrepresentations of a third party." *Beazley,* 238 S.W. at 952. "The partaking of the benefits of a fraudulent transaction makes the participants principals and liable as such." *Five Star Transfer & Terminal Warehouse Corp.,* 339 S.W.2d at 387. "Each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the fraudulent scheme," and "all who participate are liable for the fraud. . . ." *Crisp,* 586 S.W.2d at 615. We hold that appellant has failed in its burden of showing that the trial court abused its discretion in the definition of fraud. The point is rejected.

Appellant next contends that there is no evidence or insufficient evidence to sustain the jury finding as to damages, and that the findings are so grossly excessive as to require remittitur.[1]

The jury answered 1) *$50,000* to an inquiry of the sum of money which "would fairly and reasonably compensate Rogelio Hernandez for damages, if any, resulting from the occurrence in question", and, 2) *$150,000* to an inquiry of "[w]hat sum of money, if any, should be assessed against Corpus Christi Area Teachers Credit Union as exemplary damages?"

"[T]he owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else." *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex. 1984).

■■■ Further, in determining whether a damage award is excessive, the appellate court must view the evidence and facts of the case in the light most favorable to the damage award. *Chemical Express v. Cole,* 342 S.W.2d 773, 780 (Tex.Civ.App.— Dallas 1961, writ ref'd n.r.e.). The mere fact that an award is large is no indication of passion, prejudice or improper motive. *International Harvester Co. v. Zavala,* 623 S.W.2d 699, 708 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

The Texas Supreme Court declared the following regarding the ratio between actual damages and exemplary damages:

The ratio between the amount of actual damages and exemplary damages will vary according to the facts of each particular case. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). The object of the rule is not to establish any particular ratio. Rather, the rule serves its function by its prerequisite examination of the factors that determine whether an award of exemplary damages is reasonable. In *Alamo National Bank,* we noted:

Factors to consider in determining whether an award of exemplary damages is reasonable include: (1) the na-

---

1. Appellant also contends that the court's charge erroneously failed to limit the jury to a proper measure of damages. However, the record reflects that the appellant failed to object to the damage issues as presented to the jury, "and appellant cannot now complain that the court's charge permitted the jury to find damages based on a wrong measure." *Success Motivation Inst., Inc. v. Lawlis,* 503 S.W.2d 864, 867 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

ture of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice in propriety....

*Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex.1986).

■ The record reflects sufficient evidence to sustain the jury finding that the appellant was guilty of active fraud; that as a result of the fraud, appellant eventually obtained title to appellees 77 acres of land, for which the appellees paid $50,050 from their entire savings, and upon which they made improvement; that in return, appellees got a mere $4,000, which they believed was a loan, and paid over $1,000 back to Jones in the belief that they were paying off the 'loan'; that appellant received the entire proceed of $1,200 for the right of way to place a pipeline over the 77 acres in question after foreclosing on the land; and, that according to the unobjected to testimony of appellee Rogelio Hernandez, the 77 acres were worth at least $50,-000.

■ Reviewing the evidence in the light most favorable to the damage award, we hold that the award is not excessive, and the evidence sufficiently supports the jury award. *Chemical Express*, 342 S.W.2d at 780. Further, considering "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice in propriety", we hold that the exemplary damages are not unreasonable or so grossly excessive as to require remittitur. *Tatum*, 702 S.W.2d at 188.

■ Appellant next argues that the trial court committed reversible error in refusing to permit appellant to file appellant's Fourth Amended Original Answer and Special Exceptions on the eve of the trial. We disagree.

"The trial court is clothed with a large degree of discretion in ruling on special exceptions" and "[i]ts ruling will not be disturbed on appeal in absence of a showing of abuse of discretion." *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Rule 63 of the Texas Rules of Civil Procedure provides "that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party."

The record reflects that the pleading and special exceptions in question were filed by the appellant on the eve of the trial, which was clearly within seven days of trial and, thus, required prior leave by the judge to file under the provisions of TEX.R.CIV.P. 63. As required by appellate rule 74, appellant fails to direct this court to the record, and we are unable to find, where in the record appellant even requested, much less obtained leave of the court to file the late pleading and special exceptions in question. TEX.R.APP.P. 74. Since appellant failed to comply with Texas Rules of Civil Procedure 63, appellant cannot now be heard to complain that the court abused its discretion. Further, even if we ignored the fact that the appellant has not complied with the rules, it would not be an abuse of discretion for the trial court to find that the filing of pleadings and special exceptions on the eve of the trial would "operate as a surprise to the opposite party." TEX. R.CIV.P. 63. The complaints are rejected.

Finally, appellant argues that the trial court erred in overruling appellant's motion for directed verdict as to appellee, Ludivina Hernandez, because she "had presented no evidence to support her allegations that she had any interest to, right to or claim in the land which was the subject of the suit."

"An appealing party 'may not complain of errors which do not injuriously affect him or which merely affect the rights of others.'" *Buckholts Indep. School Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex.1982), citing *Jackson v. Fontaine's Clinics, Inc.*,

499 S.W.2d 87, 92 (Tex.1973) & *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754 (1888). Further, appellate rule 81(b)(1) provides the following:

> No judgment shall be reversed on appeal and a new *trial ordered in any cause* on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court. . . .

TEX.R.APP.P. 81(b)(1).

The record reflects that at all times relevant to the transaction and foreclosure of the property in question, appellees Rogelio and Ludivina Hernandez were married to each other, and it was only after the incidents giving rise to this suit occurred that they divorced. The record further reflects that appellant objected to appellee, Ludivina Hernandez, as a proper party, in a motion for instructed verdict, after all the evidence had been presented to the jury, and failed to point out to the trial court how the Credit Union was harmed by appellee's presence as a party. In fact, appellant fails to point out to this court how it was harmed by the trial court's denial of the motion, how the error complained of amounted to such a denial of its rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or how the error prevented the appellant from making a proper presentation of the case to the appellate court. *Buckholts Indep. School Dist.,* 632 S.W.2d at 150; TEX.R.APP.P. 81(b)(1). Because we are unable to ascertain how the appellant was harmed, and since the appellant has failed to show it was harmed, appellant's point is rejected.

The judgment is affirmed.